SPENCER-STURLA COMPANY *v.* CITY OF MEMPHIS.*

*(Nashville.* December Term, 1926.)

Opinion filed, February 12, 1927.

1. **CONSTITUTIONAL LAW. Municipal corporation. Districts or zones. Private Acts 1921, ch. 165. Police power.**

The Act (Private Acts 1921, ch. 165) authorizing municipalities to designate the uses to which building may be put in each district or zone, regulating the area, size and location, and to designate the trades and industries which shall be excluded or subjected to special regulations within such district, is a valid exercise of the police power under the constitution of Tennessee. (Post, p. 75-93.)

**Citing:** Constitution of Tenn., Art. 1, sec. 8; Art. 1, sec. 21; Art. 2, sec. 17. Constitution of U. S., Art. 14, sec. 1; Code Shannon, sec. 63. Williams v. Taxing District, 84 Tenn., 537; Redistricting Cases, 111 Tenn., 234, 271. Pulaski v. Ballentine, 153 Tenn., 393. Childers v. Coleman, 122 Tenn., 109, 125. Knoxville v. Water Co., 107 Tenn., 647. West v. Mill Co., 147 Tenn., 100, 116. Cooley Cons't. Lim. (7 ed.), 830. Kidd v. Pearson, 152 U. S., 16; Lawton v. Steele, 152 U. S. 130. Citing and distinguishing, State v. Turnpike Co., 133 Tenn., 446.

2. **SAME. Same. Same. Same.**

The principle of "zoning" appears to be founded in an effort to so regulate the future physical developement of a city that the unrestricted congestion of traffic and housing will not increase or be repeated. (Post, p. 81.)

3. **SAME. Same. Same. Judicial consideration.**

To determine whether a stated exercise of the police power is reasonable or arbitrary is a judicial function. (Post, p. 84.)

**Citing:** Motlow v. State, 125 Tenn., 517-589-590.

4. **SAME. Same. Same. Same.**

The legislature may impose any limitation upon the use of property which it may deem necessary or expedient to promote and protect the safety, health, morals, comfort and welfare of the people, pro-

vided only that this power shall not be exercised arbitrarily; that is, without reasonable connection or relation between the limitations imposed and the public safety, health or welfare. (Post, p. 82.)

Citing: Village of Euclid, et al. v. Ambler Realty Co., 47 U. S. 114, 71 L. Ed., 171; Davidson v. N. O. 96, U. S. 97; Yick v. Hopkins, 118 U. S., 356.

Cited and disapproved: Spann v. Dallas, 111 Tex., 350; 19 A. L. R 1387, 235 S. W., 513; Smith v. Atlanta (Ga.), 132 S. E., 66.

5. SAME. Same. Same. Exclusion.

The exclusion from a resident district commercial enterprises generally is a valid exercise of the police power, and is not unreasonable. (Post, p. 82.)

Citing: Building Inspector of Lowell v. Stocklosa, 250 Mass., 25, 145 N. E. 262; Spector v. Building Inspector of Milwaukee, 250 Mass., 63, 145 N. E., 265, 267; Brown v. Los Angeles, 183 Cal., 585, 192, Pac., 716; Theilan v. Porter, 82 Tenn., 622; R. R. v. Moriarty, 135 Tenn., 458.

6. SAME. Same. Same. Affecting values.

It has been frequently held in other jurisdictions that the inclusion of a parcel of land in a residence district is not rendered unreasonable by the fact that the value of such parcel is greater for commercial purposes. (Post, p. 91-92.)

Citing: Spector v. Milton, 250 Mass. 63; 145 N. E., 265; Blumenthal v. Cryer, 236 Pac. 216; Zahn v. Bd. Pub. Works, 195 Cal., —, 234 Pac., 388; Brown v. Los Angeles, 133 Cal., 783; 192 Pac. 716.

7. SAME. Same. Same. Reasonableness.

The reasonableness of the exclusion of particular industries from a district or zone, cannot be attacked, by persons whose interests are not affected thereby to claim an unreasonable abridgement of their property rights. (Post, p. 87-88.)

Citing: Village of Euclid v. Ambler Realty Co., 47 U. S., 114, 71 L. Ed., 171; Hyde v. State, 131 Tenn., 208, 215; Palmer v. Express Co., 129 Tenn., 116, 148, 149; Noell v. Power Co., 130 Tenn., 245.

8. SAME. Same. Same. Continuation of use of land.

Provision authorizing the continuation of the use of land in operation at the time of the adoption of an ordinance creating such

district, is not an unreasonable discrimination in favor of the non-conforming uses in existance at the time the ordinance was adopted. (Post, p. 88.)

Citing: Zahn v. Board of Public Works, 195 Cal. ——, 234 Pac., 395; City of Aurora v. Burns, 319 Ill., 84, 149 N. E., 784; Commonwealth v. Alger, 7 Cush., 53; Spector v. Building Inspector of Milton, 250 Mass., 63, 145 N. E., 265.

Citing: Sec. 7, Private Acts 1921, ch. 165.

9. SAME. Same. Same. Administration board.

Where a sufficient measure or guide for the action of an administration board is fixed in the ordinance, such is not an unconstitutional delegation of legislative power. (Post, p. 89.)

Citing: People ex rel. v. Clarke, et al., 215 N. Y. Sup., 190, sec. 17, s. s. 8, of Act.

10. SAME. Same. Same. Abuse of legislative discretion.

In making classifications of persons or property for the application of statutes or ordinances enacted in the exercise of the police power, the legislative department of the State government is uniformly held to be vested with a broad discretion, which is not reviewable by the courts, unless testimony offered in evidence is clear, strong and convincing of an abuse of legislative discretion furnishing a measure or guide by which to test the constitutionality of an Act or ordinance. (Post, p. 90.)

Citing: Scott v. Nashville Bridge Co., 143 Tenn., 86, 109; City of Memphis v. State, 133 Tenn., 84; Sullivan v. State, 136 Tenn., 194; Spector v. Building Inspector of Milton, 250 Mass., 63, 145 N. E., 265; Blumenthal v. Cryer, 256 Pac., 216; Zahn v. Board Public Works, 195 Cal., ——, 234 Pac., 388; Brown v. City of Los Angeles, 133 Cal., 783, 192 Pac., 716; Lowell v. Stoklosa, 250 Mass., 63; 145 N. E., 265, 267.

---

*Headnotes 1. Statutes, 36 Cyc., p. 1029; 2. Statutes, 36 Cyc., p. 1039; 3. Statutes, 36 Cyc., p. 1036; 4. Constitutional Law, 12 C. J., sections 390, 858; 5. Constitutional Law, 12 C. J., sections 442, 991; 6. Constitutional Law, 12 C. J., section 991; Municipal Corporations, 28 Cyc., p. 737 (Anno); 7. Constitutional Law, 12 C. J., section 459; 8. Constitutional Law, 12 C. J., sections 219, 443; 9. Constitutional Law, 12 C. J., section 1076; 10. Municipal Corporations, 28 Cyc., p. 737 (Anno); 11. Municipal Corporations, 28 Cyc., p. 737 (Anno); 12.

Constitutional Law, 12 C. J., section 177; 13. Municipal Corporations, 28 Cyc., p. 737 (Anno); 14. Municipal Corporations, 28 Cyc., p. 694; 15. Municipal Corporations, 28 Cyc., p. 809; 16. Constitutional Law, 12 C. J., section 390 (Anno).

### FROM SHELBY.

Appeal from the Circuit Court of Shelby County.— HON. BEN L. CAPELL, A. B. PITTMAN and M. R. PATTERSON, Judges.

H. W. LAUGHLIN, EWING, KING & KING and HUNTER WILSON, for plaintiff in error.

E. B. KLEWER and T. K. RIDDICK, for defendant in error.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

This case was instituted by a warrant issued by the judge of the city court of Memphis, charging that the Spencer-Sturla Company had violated an ordinance of the city of Memphis, in that the said company, "unlawfully maintained or aided and abetted in the maintenance of an undertaking establishment or mortuary on a lot at the southeast corner of Union avenue and LeMaster street, in a district zoned as 'B' residence district, contrary to the provisions of said ordinance."

The judge of the city court having rendered judgment for the city, the Spencer-Sturla Company appealed to the Circuit Court of Shelby County, where judgment was again rendered against it, and a fine assessed in the sum of $50.  Motion for a new trial having been made and overruled, an appeal in the nature of a writ of error was prayed and granted to this court.

The ordinance defining the offense charged in the warrant was adopted by the city of Memphis on November 7, 1922.  It divides the entire area within the municipal

boundaries into districts, and regulates the height, area and use of buildings located within the several districts. The general purpose of the ordinance is to exclude industrial and commercial enterprises from residential districts, and to so regulate the construction of buildings, both for commercial and residential purposes, as to properly conserve the health and welfare of persons residing within the city, and to conserve and protect the property rights of owners of land within the several districts.

The ordinance was adopted by the city under the authority of Chapter 165 of the Private Acts of the General Assembly for 1921, which applies to all municipalities within the State having a population in excess of 160,000.

The plaintiff in error contends that the statute authorizing the ordinance is unconstitutional, and that the ordinance deprives it of certain property rights guaranteed by the Constitution of Tennessee and the Constitution of the United States.

These contentions having been made, we think the case properly presents for determination the validity and constitutionality of the statute referred to, and of the ordinance in its fundamental and essential particulars, although certain provisions of the ordinance, which are not essential to its validity, and which are not involved by the facts of the present case, need not be considered herein, as will be hereinafter made to appear.

The caption of Chapter 165 of the Private Acts of 1921 describes it as an act to empower municipalities having a population in excess of 160,000 inhabitants to provide for the establishment of districts or zones within the corporate limits, and to regulate within such districts or zones, "the use or uses of land, the height, the area, the size and the location of buildings, the required open spaces for the light and ventilation of such buildings and

the density of population." The caption also refers to provisions for a "Board of Appeals," and penalties.

The body of the act authorizes municipalities within the class created to regulate and restrict by ordinance the location of trades and industries, and the location of buildings designed for specified uses, and for said purpose to divide the municipality into districts.

The municipalities are authorized by the statute to designate the uses to which buildings may be put within each district created, and to designate the trades and industries which shall be excluded or subjected to special regulations within each district. The regulations which may be specified are directed to be in accordance with a plan "designed to lessen congestion on the public streets, to promote the public health, safety, convenience and general welfare." It is also directed that such regulations shall be made "with reasonable consideration, among other things, to the character of the district, its peculiar suitability for particular uses, the conservation of property values, and the direction of building development."

Section 2 of the statute authorizes regulations by ordinance of the height and bulk of buildings erected or altered after the enactment of the statute, and authorizes regulations with regard to the percentage of a lot to be devoted to yards, courts and other open spaces; all such regulations to be uniform for each class of buildings, within a given district. It is directed that all such regulations "shall be designed to lessen congestion on public streets, to secure safety from fires and other dangers, to promote the public health and welfare, including provisions for adequate light, air and convenience of access."

The municipalities are also enjoined in this section to give reasonable regard to the character of buildings erected in each district for which regulations are provided, the value of land and the use to which it may be put, etc.; all to the end "that such regulations will promote the public health, safety and welfare, the most desirable use for which the land of each district may be adopted, and tend to conserve the value of buildings and to stabilize the value of land throughout such districts."

In section 3 of the statute the municipalities are empowered to create districts in which "the number of families which may be housed in dwellings or tenement houses hereafter erected or altered," may be limited or restricted so as "to limit the over-crowding of land and to avoid undue congestion of population, to facilitate adequate provision of transit, water, sewerage disposal, education, recreation and other public requirements, and to promote the public health, morals, safety, convenience and general welfare."

Section 4 provides for an investigation and report of a "City Planning Commission" before any ordinance authorized by the statute shall be adopted; and after the adoption of such an ordinance protection to property holders against frequent or partial alterations in its provisions is afforded by requiring that whenever protest from a certain percentage of interested property holders is made against any amendment, supplement, or change, a four-fifths vote of the legislative body of the city shall be required for the adoption of any such amendment.

Section 7 of the statute provides for the continuation in the use and maintenance of buildings and industries established and lawful at the time of the adoption of any such ordinance, notwithstanding their non-conformity to the provisions of the ordinance.

The plaintiff in error first contends that this statute violates article 2, section 17, of the Constitution of Tennessee, in that the body of the act is broader than its caption. It is argued that the caption indicates only that the municipalities shall have power to regulate "the use or uses of land," while the body of the act authorizes regulation of the use or uses to which buildings located on the land may be put.

Applying the rule that the body of an act may include any provisions germane to the general subject expressed in the caption, and that provisions fairly indicated by the language of the caption may be included in the act, we think it sufficient to say that the recitation of the caption that the act will contain provisions regulating the use of land fairly indicates that the regulations will include the use to which buildings located on the land may be put. See the definition of "lands" in section 63 of Shannon's Code (Code of 1858, section 51), and in *Childers* v. *Coleman*, 122 Tenn., 109, 125.

It is next contended that the statute authorizes the municipalities to entirely exclude trades and industries, which are lawful in their nature, from specified areas or districts of the city; and that this amounts to a prohibition and not a mere regulation of the use to which land may be put, the caption of the act indicating that only regulation is within the scope of the act.

The caption of the act indicates that the use regulations authorized by the act are to be included in general ordinances dividing the land within the city into districts or "zones," and that the regulations are to be applied to the land "within such zones or districts." The clear implication of the caption is, we think, that the regulations to be authorized may permit land in one zone or district to be put to uses denied for land in another district of

the city. It is difficult to perceive how the use of the land included within a district may be regulated without provisions excluding certain uses for specified purposes. We think a provision that the land within a specified district of a city may be used only for residence purposes, or for limited commercial or industrial purposes, is a regulation of the use of the land within the district and not a prohibition of its use. *Palmer* v. *Express Co.* 129 Tenn., 116, 157; *Mayor, etc., of Nashville* v. *Linck,* 80 Tenn., 499.

It is further contended by the plaintiff in error that the statute violates article 1, section 8, of the Constitution of Tennessee in that it is limited in its application to municipalities having a population in excess of 160,000 inhabitants, and at present applies to no other municipality within the State than the city of Memphis. The contention is that the statute is not "the law of the land," because it does not apply alike to all the municipalities of the State.

We do not find the classification arbitrary or unreasonable. The municipal regulations authorized by the statute have direct connection with the density of population, and the legislature may have deemed them to be necessary on account of the congestion of population within municipalities of the larger class.

The principle stated in *The State* v. *Turnpike Co.,* 133 Tenn., 446, is not applicable. Furthermore, the act confers upon the municipalities within its application particular franchises or rights which are in the nature of charter provisions pertaining to the governmental functions of a municipal corporation. *Williams* v. *Taxing District,* 84 Tenn., 537, 538, quoted with approval in *The Redistricting Cases,* 111 Tenn., 234, 271; *Pulaski* v. *Ballentine,* 153 Tenn., 393.

The plaintiff in error contends that the statute is in violation of section 21 of article 1 of the Constitution of

Tennessee, in that it authorizes the municipalities to take the property of individuals without the consent of their representatives and without just compensation being made therefor. The contention is that "the limitations, restrictions and prohibitions placed upon the legal use of property is just as much a 'taking' and an application to a public use, as if physically taken and appropriated."

It is further contended that the statute is in violation of Section 8 of Article 1 of the Constitution, in that it authorizes municipalities to destroy property rights and to deprive property owners of their property other than by "the law of the land." The contention of the plaintiff in error in support of this proposition is stated in its brief as follows:

"The police power of the states does not justify the serious abridgement of property rights attempted in the zone ordinance. Neither the public health, safety, convenience nor general welfare requires the imposition of such severe, radical and revolutionary limitations on the legitimate use of private property. No such application of it has ever been made nor attempted in Tennessee."

It seems obvious that if the powers defined in the statute under consideration can be exercised constitutionally by a municipal government, it must be by reason of the police power, and, in fact, it is conceded on the briefs of both parties that the general assembly was acting in the exercise of the police power in the enactment of the statute. This being true, the validity of the statute is not to be tested according to the provisions of Section 21 of Article 1 of the Constitution of Tennessee, for an exercise of the police power, otherwise valid and constitutional, cannot be defeated because property rights are taken or destroyed thereby without compensation. *Theilan* v. *Porter*, 82 Tenn., 622; *Railroad* v. *Moriarity*, 135 Tenn., 458.

The authorities cited in support of the contention of the plaintiff in error that the restrictions and limitations upon the use of property authorized by the statute amount to a taking of property rights for public use, for which compensation is required to be paid under the constitution, are cases in which it was held that the "taking" was effected by the exercise of the power of eminent domain, and are, therefore, not applicable to the present inquiry.

The serious question involved in the case is that presented by the second contention of the plaintiff in error, stated above, that the abridgement of property rights authorized by the statute cannot properly be held to be within the police power of the State.

If the powers conferred upon municipalities by the statute do not fall within the police power, the statute could not be said to be "the law of the land," and it would necessarily fall under the attack of the plaintiff in error, because in violation of Section 8 of Article 1 of the Constitution of Tennessee.

The power conferred upon municipalities by the statute is, broadly speaking, to divide the area within the municipal boundaries into zones or districts, and so to regulate the use to which the land within each such zone or district may be put, that resident districts shall be separated from commercial districts; that within each residence district the number of families occupying a single dwelling may not be so great as to create over-crowding, with a resultant congestion on the public streets and an increase in fire and disease hazards; that buildings may not be constructed so high or so near another building as to imperil the safety of the occupants or their property, or their health, by creating fire hazards, or by excluding or cutting off that amount of light and air necessary to the health and welfare of persons residing or

employed in such buildings. All of these powers are re-
quired to be exercised by the municipalities within the
application of the statute, with due and reasonable re-
gard to the character of each such district or zone, its
peculiar suitability for particular uses, the conservation
of property values, and the direction of building develop-
ment; but the language of the statute is that these last-
named considerations shall only be regarded by the mu-
nicipality, in order that the regulations authorized by the
statute should be so framed as to "promote the public
health, safety and welfare."

Inasmuch as no reported case is to be found in Tennes-
see determining whether this broad power to direct the
growth and development of a city can be conferred upon
a municipal government, it is necessary to consider early
statements of the nature, extent and limitations of the
police power.

The definition of police power made by Chief Justice
Shaw in *Commonwealth* v. *Alger,* 7 Cush., 53, is quoted
in Cooley's Constitutional Limitation (7 Ed.), p. 830. It
has been quoted in part and followed by this court in
.*Theilan* v. *Porter,* 82 Tenn., 622, 626-627, and in *Harbi-
son* v. *Knoxville Iron Co.,* 103 Tenn., 420. The state
ment of Chief Justice Shaw includes the following:

"All property in this Commonwealth is  .  .  .  held
subject to those general regulations which are necessary
to the common good and general welfare. Rights of
property, like all other social and conventional rights,
are subject to such reasonable limitations in their enjoy-
ment as shall prevent them from being injurious, and to
such reasonable restraints and regulations established
by law as the legislature, under the governing and con-
trolling power vested in them by the Constitution, may
think necessary and expedient. This is very different
from the right of eminent domain—the right of a govern-

155 Tenn.—6.

ment to take and appropriate private property whenever the public exigency requires it, which can be done only on condition of providing a reasonable compensation therefor. The power we allude to is rather the police power; the power vested in the legislature by the Constitution to make, ordain, and establish all manner of wholesome and reasonable laws, statutes and ordinances, either with penalties or without, not repugnant to the Constitution, as they shall judge to be for the good and welfare of the commonwealth, and of the subjects of the same. It is much easier to perceive and realize the existence and sources of this power than to mark its boundaries, or prescribe limits to its exercise.''

In *Harbison* v. *Knoxville Iron Co.*, 103 Tenn., 421, an authority which has been cited and followed in many subsequent cases, the court, at pages 441-442, said:

''Furthermore, the passage of this Act was a legitimate exercise of police power, and upon that ground also the legislation is well sustained. The first right of a State, as of a man, is self-protection, and with the State that right involves the universally acknowledged power and duty to enact and enforce all such laws, not in plain conflict with some provision of the State or Federal constitution, as may rightly be deemed necessary or expedient for the safety, health, morals, comfort, and welfare of its people. (Citing cases.)

''This power is an important and comprehensive one, and its application must be expected and allowed to expand and take in new subjects from time to time, as trade and business advance and new conditions arise. The scope of its exercise, within the bounds already mentioned, is limited only by the requirement that it shall not arbitrarily and unreasonably affect the citizen in his life, liberty, and property. It cannot be an excuse for oppressive legislation (*Davidson* v. *New Orleans*, 96 U. S.,

97; *Yick* v. *Hopkins,* 118 U. S., 356); but it covers every-thing relating to the public interests, and, in its exercise, a large discretion is necessarily vested in the legislature, which, in the first instance, is presumed to know not only what the welfare of the public requires, but also what measures are necessary for its advancement. *Kidd* v. *Pearson,* 128 U. S., 1; *Lawton* v. *Steele,* 152 U. S., 136."

The language just quoted from *Harbison* v. *Knoxville Iron Company,* was also quoted by this court, with approval, in *West* v. *Jefferson Wollen Mills,* 147 Tenn., 100, 116.

In *Knoxville* v. *Knoxville Water Co.,* 107 Tenn., 647, 685-686, the court said:

"What matters fall within the scope of the police powers of the State or of a municipality has never been definitely determined. A large number of subjects have been embraced, such as the public health, the public morals, the public safety, and the general and comprehensive clause of the public welfare, and after the enumeration of all the subjects under these and other general heads, the text books announce that there are also other instances. Different jurisdictions lay down different rules and limits. In *Theilan* v. *Porter,* 14 Lea, 626, 'the safety and tranquility of the community and the orderly existence of the government is included in the enumeration.'"

Upon the foregoing authorities it may be said safely that the legislature may impose any limitation upon the use of property which it may deem necessary or expedient to promote and protect the safety, health, morals, comfort and welfare of the people, provided only that this power shall not be exercised arbitrarily; that is, without reasonable connection or relation between the limitation imposed and the public safety, health or welfare, etc.

To determine whether a stated exercise of the police power is reasonable or arbitrary is a judicial function, and it is the determination of this question which the plaintiff in error is invoking by his assignments of error. The extent of judicial inquiry is, however, not unlimited.

In *Motlow* v. *State,* 125 Tenn., 517, 589-590, this court, through Chief Justice NEIL, said:

"The police power is a necessary one, inhering in every sovereignty, for the preservation of the public safety, the public health, and the public morals. It is of vast and undefined extent, expanding and enlarging in the multiplicity of its activities as exigencies demanding its service arise in the development of our complex civilization. It is a function of the government solely within the domain of the legislature to declare when this power shall be brought into operation, for the protection or advancement of the public welfare. It is said that the courts have the right to determine whether such law is reasonable. By this expression, however, it is not meant that they have power to pass upon the act with a view to determining whether it was dictated by a wise or a foolish policy, or whether it will ultimately redound to the public good, or whether it is contrary to natural justice and equity. These are considerations solely for the legislature. In determining whether such act is reasonable, the courts decide merely whether it has any real tendency to carry into effect the purposes designed —that is, the protection of the public safety, the public health, or the public morals—and whether that is really the end had in view, and whether the interests of the public generally, as distinguished from those of a particular class, require such interference, and whether the act in question violates any provision of the State or Federal Constitution."

It seems to us that the application of the foregoing quotations to the statute under consideration is obvious. The reduction of fire hazards, provisions to reduce congestion in dwelling houses and neighborhoods, provisions designed to secure to families in their homes and laborers in their places of employment sufficient light and fresh air for their comfort and health, have a direct relation to and connection with the public purposes for which the police power may be exercised. So also are provisions for the preservation of property values. We think the segregation of residence districts from commercial districts within a particular city, the control of the height and bulk of buildings with regard to the area of the lot on which such buildings are constructed, the limitation of the number of families who may occupy a single dwelling, are powers which may be reasonably exercised by a municipal government for the protection and promotion of the public health, safety, morals and welfare; and we have not been able to find any constitutional inhibition against the reasonable exercise of such powers by the State or municipality.

We find authoritative support for the conclusions herein reached as to the validity of the statute in the opinion rendered by the Supreme Court of the United States on November 22, 1926, in the case of *Village of Euclid et al.* v. *Ambler Realty Co.*, 47 Supreme Court Reports, 114, 71 L. Ed., ——. We have examined the cases on this subject decided by the State courts, but find it unnecessary to review them herein. We fully concur with the conclusions stated by the Supreme Court of the United States in the case cited, and find the great weight of opinion in the state courts in accord therewith.

The cases of *Spann* v. *Dallas*, 111 Tex., 350, 19 A. L. R., 1387, 235 S. W., 513, and *Smith* v. *Atlanta* (Ga.), 132 S. E., 66, appear to be typical of the cases holding the

contrary view. We are wholly unable to accept the narrow and restricted conception of the police power stated in *Spann* v. *Dallas*, notwithstanding the ordinance there under consideration may have been correctly declared invalid because of the delegation of power to the owners of land; and it appears to us that the Supreme Court of Georgia in *Smith* v. *Atlanta*, reached its conclusion from a too narrow view of the subject-matter, as will appear from a comparison of the reasoning of that court with the opinion in *Village of Euclid* v. *Ambler Realty Co.*, supra.

Having reached the conclusion that the statute is a valid exercise of the police power, under the Constitution of Tennessee, it necessarily results that we overrule the further contention of the plaintiff in error that the statute is in violation of the first section of the fourteenth amendment to the Constitution of the United States. The holding of the Supreme Court in *Village of Euclid* v. *Ambler Realty Co.*, supra, would also force us to overrule this contention.

The ordinance of the city of Memphis, upon the authority of which the warrant in this case was issued against the plaintiff in error, follows the authority of the statute. The offense charged in the warrant is that the plaintiff in error unlawfully maintained an undertaking establishment in a district of the city described as "B residence district," in which it was made unlawful by the ordinance to maintain or carry on any commercial enterprise except hotels, apartment houses, boarding and lodging houses, hospitals and clinics, educational institutions, nurseries and green houses, and public garages for storage purposes only.

The ordinance does not purport to deal with the undertaking establishments by name or particular designation. They are excluded from the district only because

they are commercial enterprises, not within the classes permitted in the district. The plaintiff in error is, therefore, entitled to contest the reasonableness of the ordinance, in that it excludes from the district commercial enterprises generally. We hold, upon the authorities hereinabove discussed, that such exclusion is a valid exercise of the police power. *Building Inspector of Lowell* v. *Stoklosa,* 250 Mass., 52, 145 N. E., 262; *Spector* v. *Building Inspector of Milton,* 250 Mass., 63, 145 N. E., 265, 267.

The plaintiff in error attacks the reasonableness of the ordinance in several details, such as the exclusion from certain districts, because within the classification of commercial enterprises, of boarding houses, sewing women, registered nurses, and the like. Provisions regulating the placing of signs or name plates, and billboards, in residence districts are also criticised as an unreasonable exercise of the police power.

The application of the ordinance involved in the present case results in the exclusion of an undertaking establishment from a residence district. Conceding to the city the general powers conferred by the statute hereinabove considered, the exclusion of an undertaking establishment from a residence district is not subject to the criticism of unreasonableness. *Brown* v. *Los Angeles,* 183 Cal., 585, 192 Pac., 716. Counsel for the plaintiff in error admitted on the trial of this case that locating the undertaking establishment of the plaintiff in error had probably diminished the value of all adjoining property to the extent of fifty per cent.

We do not think the plaintiff in error is in a position to attack the reasonableness of the exclusion of particular industries in which it does not appear to have any interest. It will be sufficient to consider the reasonableness of those provisions of the ordinance when persons

whose interests are affected thereby claim an unreasonable abridgement of their property rights. *Village of Euclid* v. *Ambler Realty Co.*, 47 Supreme Court Reports, 114, 71 L. Ed., 171; *Hyde* v. *State*, 131 Tenn., 208, 215; *Palmer* v. *Express Co.*, 129 Tenn., 116, 148-149; *Noell* v. *Power Co.*, 130 Tenn., 245.

The ordinance contains provisions authorizing the continuation of the use of land in operation at the time of the adoption of the ordinance, notwithstanding such use does not conform to the provisions of the ordinance. This is in accord with the direction contained in Section 7 of the statute, Chapter 165 of the Private Acts of 1921.

We do not find that these provisions create an unreasonable discrimination in favor of the non-conforming uses in existence at the time the ordinance was adopted. *Zahn* v. *Board of Public Works*, 195 Cal., —, 234 Pac., 395; *City of Aurora* v. *Burns*, 319 Ill., 84, 149 N. E., 784; *Commonwealth* v. *Alger*, 7 Cush., 53; *Spector* v. *Building Inspector of Milton*, 250 Mass., 63, 145 N. E., 265. The impracticability, if not impossibility, of prohibiting the continuation of a use to which land has already been devoted, is a sufficient and reasonable basis for the apparent discrimination involved in the failure to make the ordinance retrospective. In many instances the existing uses are not permanent in their nature, and the principle of ''zoning'' appears to be founded in an effort to so regulate the future physical development of a city that the unrestricted congestion of traffic and housing will not increase or be repeated.

Section 17 of the ordinance creates an administrative board, for purposes of enforcement, and this board is given authority to permit certain stipulated and described variations from the ''use, height and area district regulations.'' Sub-section 8 of this Section authorizes the administrative board to ''interpret the pro-

visions of this ordinance in harmony with their funda-
mental purpose and intent where practical difficulties or
unnecessary hardships occur.''

It is contended for the plaintiff in error that the pro-
visions of Sub-section 8 constitute an unauthorized dele-
gation of legislative power to the administrative board.
Provisions of such an ordinance authorizing an admin-
istrative board to permit departures from the require-
ments of the ordinance have been held to constitute an
unconstitutional delegation of legislative power, when no
sufficient measure or guide for the action of the admin-
istrative board is fixed in the ordinance. In the pres-
ent case the administrative board is required to follow
the ''fundamental purpose and intent'' of the ordinance
in every instance, and the board is not given such dis-
cretion as will amount to a delegation of the legislative
power of the city government. The same language ap-
pears in a similar ordinance under consideration by the
appellate division of the Supreme Court of New York in
*People ex rel.* v. *Clarke et al.,* 215 N. Y. Sup., 190. In
that case an exercise of discretion by the administrative
board was reviewed by the writ of *certiorari,* at the in-
stance of owners of property within the district, and it
appearing that the administrative board had abused its
discretion, the interests of the property holders were
protected by setting aside the order of the administra-
tive board. This procedure would be authorized in Ten-
nessee, and the administrative board is, therefore, not
''a law unto itself,'' as claimed by the plaintiff in error.

The learned trial judge declined to permit the plain-
tiff in error to introduce in evidence certain testimony,
and this action of the trial judge is assigned as error.
The excluded testimony tended to show that Union
avenue, on which the property of the plaintiff in error
is located, had become largely devoted to commercial

uses, between plaintiff in error's location and the business part of the city, and that no residences had been erected on Union avenue in the section of the location of the plaintiff in error for ten years; that the property of the plaintiff in error is worth $30,000 for commercial uses, and $20,000 for residence uses; that other undertaking establishments are located on Union avenue, between the plaintiff in error and the business part of the city; that Madison avenue, which is parallel with Union avenue, and only two blocks north of it, has many expensive residences fronting thereon, and that Madison avenue is zoned as within a commercial district.

Some of this testimony was admitted in evidence, but we do not think any of it competent, for the reason that, taken altogether, the evidence offered by the plaintiff in error falls far short of showing an abuse of legislative discretion which the courts could review.

In making classifications of persons or property for the application of statutes or ordinances enacted in the exercise of the police power, the legislative department of the State government is uniformly held to be vested with a broad discretion.

In *Scott* v. *Nashville Bridge Co.,* 143 Tenn., 86, 109, this court quoted from *City of Memphis* v. *State,* 133 Tenn., 84, as follows:

"Mathematical or logical exactness, in every aspect, in a division for classification is not always possible, and it is not required in order to validity. 'The best that can be done is to keep within the clearly reasonable and practicable. That is accomplished where there are such general characteristics of the members of the class as to reasonably call for special legislative treatment.' "

In *Sullivan* v. *State,* 136 Tenn., 194, a statute applying to counties of a designated population was under

attack as creating an arbitrary classification. The statute made it a misdemeanor for small live stock to be permitted to run at large in the county to which the statute applied, and proof was offered to show that in adjoining counties the same physical conditions existed, and that all such counties were chiefly devoted to grazing, so that, with reference to a stock law, no one of such counties could reasonably be segregated from the others and placed in a class by itself. In holding such proof immaterial, this court said:

"This is but an argument that presently existing conditions, set forth in proof direct or arising by way of that species of evidence that is denominated judicial knowledge or notice, may determine the constitutionality of an act of the legislature. Let us assume that lands, in one or more of such counties now devoted to stock grazing, come into general or considerable use for orcharding, would the assumed statute thereby be or become changed as to constitutional *status?* If one-half of the lands of a county are tillable and the other half are used for the grazing of stock, would such an act, as applied to it alone, or to it and others, be constitutional or unconstitutional? If it be admitted that the greater area is in use for grazing, may we declare such an act unconstitutional even if the legislature deems that, as to one of such counties, the better policy is to discourage grazing and to encourage agricultural development thereof?

"The contention of appellant furnishes no standard by which to determine the constitutionality of such measures that is not illusory; but, in essence, the court is asked to overrule the discretion vested in the legislature."

It has been frequently held in other jurisdictions that the inclusion of a parcel of land in a residence district

is not rendered unreasonable by the fact that the value of such parcel is greater for commercial purposes than for residence purposes. *Spector* v. *Building Inspector of Milton,* 250 Mass., 63, 145 N. E., 265; *Blumenthal* v. *Cryer,* 236 Pac., 216; *Zahn* v. *Board of Public Works,* 195 Cal., —, 234 Pac., 388.

That the similarity of the present development of Madison avenue and Union avenue, two blocks apart, does not render arbitrary the action of the legislative council of the city in placing them in separate and distinct "use" districts, is clearly shown by the language of this court hereinabove quoted from *Sullivan* v. *State,* and also by the following quotation from *Brown* v. *City of Los Angeles,* 133 Cal., 783, 192 Pac., 716:

"The mere fact that outside of the permissive district there was other property similar in nature and character would not justify the court upon ascertaining that fact to substitute its judgment for the legislative judgment. The boundary line of a district must always be more or less arbitrary, for the property on one side of the line cannot, in the nature of things, be very different from that immediately on the other side of that line."

It results that we are unable to find that the excluded evidence would have furnished any measure or guide by which to test the constitutionality of either the statute or the ordinance, and the ruling of the trial judge excluding it must be sustained.

The judgment of the Circuit Court will be affirmed, with costs.