MEADOR *et al. v.* CITY OF NASHVILLE.

(*Nashville,* December Term, 1948.)

Opinion filed April 30, 1949.

Rehearing Denied June 18, 1949.

E. J. WALSH, J. G. STEPHENSON and J. G. LACKEY, JR., all of Nashville, for appellants.

E. C. YOKLEY and W. C. CHERRY, both of Nashville, for appellees.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

Section 12, paragraph G, of the zoning law of the City of Nashville reads as follows: ''No building in the rear of the principal building on the same lot shall be used for residence purposes except for domestic employees of the owner or tenants of the principal building, unless

such rear building shall conform to the open space requirements of this ordinance for the principal building and shall have on the same lot an easement of access, unoccupied to a street at least twelve feet wide, in addition to any other open space requirements of this Article.''

Meador and wife are the owners of a lot within the zoning district embraced in the above regulation. They purchased it from Meggs and wife in 1945.

At the time of the aforesaid purchase, as now, there was a small building on the rear of the lot and a larger or principal building on the front of the lot. Both buildings are residences. The rear building does not conform with the open space requirements of the above quoted ordinance, nor does it have an easement of access twelve feet wide unoccupied to a street. Meador and wife, the owners of the lot, reside in the principal dwelling. The rear dwelling is occupied by a renter who is not a domestic employee of Meador.

In response to the direction of city officials that the renters vacate the rear building, Meador and wife and their vendors, Meggs and wife, by bill and cross-bill insist that this ordinance is an unreasonable and arbitrary interference with the rights of the owners of this lot, and amounts to a taking of the property without due process of law, contrary to applicable constitutional provisions of our State and Federal Governments.

The City of Nashville challenged this insistence by appropriate demurrer. The Chancellor sustained that demurrer. Meador and Meggs have appealed, and by their assignments of error present for determination here the constitutional question stated.          ,

In considering the question, it must be with recognition of the fact that this ordinance, as do most zoning

ordinances, interferes with the owner's right of dominion over his own property. While the right of the individual to do with his property as he pleases must yield to the superior duty of that individual's government to place thereupon such limitations as are reasonably necessary to prevent conditions inimical to the safety, health, morals and ordinary well-being of all his neighbors and their property, yet such police power of the government may not be imposed arbitrarily under either our State or Federal Constitution.

Whether the imposition of a given limitation upon this right of the individual to do as he pleases with his property is wise or not is solely a matter for determination by the legislative branch of government. The sole power of the judiciary is to determine whether such legislation has any reasonable tendency to prevent conditions inimical to these superior rights of the people, as a unit, and if not, to declare it unconstitutional.

In response to the exercise of this police power of the State, the quantity and extent of zoning ordinances have everywhere increased with the increase of concentration of population in cities and towns, and with it, an increase of the complex problems thereby created. The validity of such ordinances has been challenged frequently by property owners. A very fine and comprehensive discussion of the question and the development of the law with reference thereto is had in the New Hampshire case of *Sundeen* v. *Rogers*, 83 N. H. 253, 141 A. 142, 57 A. L. R. 950. In whatever form presented, ultimately the question for judicial determination is the same, to wit: Does the zoning ordinance in question have any reasonable connection or relation with the pro-

tection of public safety, health, morals and natural well-being of the people?

The provisions of the zoning ordinance under consideration here make it clear that its purpose, among possibly others, is to prevent undue congestion in a residential zone, and to thereby avoid (1) the commonly known evils and dangers of such congestion, and (2) the impairment of property values (economic) which ordinarily follow such congestion in a residential zone. Therefore, the enforcement of the provisions of this ordinance does have a reasonable tendency to prevent conditions which are detrimental to the ordinary well-being of the people of that neighborhood, as a unit. To this extent, the ordinance seems to come directly within the rule stated by this Court in *Spencer-Sturla Co.* v. *Memphis*, 155 Tenn. 70, 290 S. W. 608, viz.: "The Legislature may impose any limitation upon the use of property which it may deem necessary or expedient to promote and protect the safety, health, morals, comfort, and welfare of the people, provided only that this power shall not be exercised arbitrarily; that is, without reasonable connection or relation between the limitation imposed and the public safety, health, or welfare, etc." 155 Tenn. at page 83, 290 S. W. at page 612.

So, this zoning ordinance must be held to be a valid exercise of the police power unless, as insisted by these appellants, the right given by it for the rear residence to be occupied by the domestic servants of those living in the principal residence destroys its objective, and thereby renders it arbitrary or discriminatory.

The obvious purpose of the act, when considered as a whole, is to limit the occupancy of a specific area under the physical conditions it states to a single family,

but reserving to that family the convenience which results when the family servant resides on the premises, a convenience generally treasured and often followed, if at all practical, at least in this part of our country. Servants have been held to come within the meaning of the word "family" as used in a lease restricting the premises to use as a family residence. *Mullins* v. *Nordlow*, 170 Ky. 169, 185 S. W. 825.

The exception made by permitting the servant to reside in the area limited to the use of a single family is an accessory use. Such accessory use is recognized in the enactment of restrictive zoning ordinances. The text of 58 American Jurisprudence, page 969, Section 46, in part, is: "It is not unusual for zoning ordinances, after expressly stipulating uses to which property may be put, to provide further for uses 'accessory' or 'incidental' to the expressly permitted use." Some cases dealing with zoning ordinances which permit use for accessory or incidental purposes are collected in 150 A. L. R. 494 et seq.

In the briefs of appellants and in oral argument, situations inconsistent with the purpose of this ordinance as being made possible by reason of the provision with reference to servants are pointed out. Such inconsistencies are possible. However, that does not make the ordinance invalid. As observed in *Spencer-Sturla Co.* v. *Memphis, supra,* 155 Tenn. at page 90, 290 S. W. at page 615: "Mathematical or logical exactness, in every aspect, in a division for classification is not always possible, and it is not required in order to validity. 'The best that can be done is to keep within the clearly reasonable and practicable.' "

Having reached the conclusion that this ordinance is valid, it becomes unnecessary to discuss the two other assignments of error made by one or the other of these two appellants since, as counsel will observe upon reflection, the determinative question as between the City of Nashville, upon the one hand, and these appellants, upon the other, is whether the ordinance is constitutional. These assignments of error have been considered, however, and, in our opinion, are not well taken.

Affirmed with costs adjudged against appellants and their sureties.

All concur.