John FISER et al., Plaintiffs-Appellants,

v.

CITY OF KNOXVILLE et al.,
Defendants-Appellees.

Court of Appeals of Tennessee,
Eastern Section.

Feb. 16, 1979.

Certiorari Denied by Supreme Court
July 2, 1979.

McCord & Cockrill, P. C., Knoxville, for plaintiffs-appellants.

Jon Roach, W. Mitchell Cramer and Robert Finley, Knoxville, for defendants-appellees.

## OPINION

FRANKS, Judge.

This appeal presents for determination the scope of judicial review of the exercise of police powers by municipalities in regulating the use of real property by zoning ordinances.

Plaintiffs own approximately 7 acres abutting Kingston Pike in the City of Knoxville; the acreage is presently zoned for single family residences, an R-1 classification. In early 1976, in an effort to obtain approval for constructing an apartment complex on the acreage, plaintiffs made application for a change in zoning from the existing R-1 to an R-2 classification. The Knoxville-Knox County Metropolitan Planning Commission recommended against the rezoning application and, subsequently, on April 6, 1976, the requested change was rejected by the Knoxville City Council on a split vote; no appeal was taken from that action.

On July 14, 1976, plaintiffs again petitioned for rezoning, requesting an R-3 classification [1] (which allows a greater density of population than the R-2 classification previously requested). The petition was otherwise the same as the prior application. The commission again voted against recommending plaintiffs' proposed rezoning, and plaintiffs then requested the city council to rezone the acreage.

On the date of the hearing before the council, plaintiffs' attorney requested three members of the council recuse themselves from participating in the consideration of the zoning petition on the grounds that those councilmen and women had, prior to the hearing, made statements [2] or commitments, for personal or political reasons, to vote against plaintiffs' rezoning petition. The council members declined the request and, following the presentation, the council voted 7-2 to deny the zoning request. Plaintiffs by certiorari appealed the case to the chancery court where the Chancellor permitted plaintiff, Fiser, to testify to prehearing statements made by individual members of the council. Two councilmen were called as witnesses by the defendants and generally refuted statements attributed to them by the plaintiff.

The Chancellor determined that two members of the council, Rex Davis and M. T. Bellah, should have recused themselves from considering the case. The Chancellor

---

1. Procedurally, plaintiffs could not request the same rezoning classification until one year had elapsed from the initial rejection.

2. Pre-hearing statements attributed to councilmen include:

   The majority of the people down here, of course, are strong against it. Ah, I would suspect that the vote would be the same as it would be last time. I see no reason for it to be changed. The vote last time was six to three against rezoning. I am going to have to vote like, I am going to have to vote like I did last time. I am going to have to vote against it this time.

   In response to a questionnaire on zoning, one successful candidate for the council stated:

   I firmly believe people are smart enough to govern themselves and that neighborhood residents are best qualified to decide the uses they want for themselves and their families. I will remain a supporter of the wishes of the people.

found, in the absence of these councilmen's testimony, that Davis had apparently made his decision to oppose the rezoning application upon the advice of the editor of the *Knoxville News Sentinel,* to the effect that a vote in favor of the petition would be "political suicide" and Bellah had stated to the plaintiff that he, Bellah, personally approved of the proposed project but felt compelled to abide by a signed commitment made previously to a local homeowners' association. The substance of the commitment was a pledge to vote against any rezoning on Kingston Pike in a stated area which encompassed the proposed project. The Chancellor rejected plaintiffs' challenges to three other council members. The Chancellor, in dismissing plaintiffs' petition, concluded the elimination of the votes of the two disqualified members left a majority of the councilmen voting against the petition.

Plaintiffs assign as error the failure of the Chancellor to disqualify the three challenged council members and insist the action of the council should be voided due to the participation of two disqualified members and also seek alternative relief, charging either the Chancellor should have rezoned the property or remanded the petition to the council for a further determination.

Plaintiffs base their claim for relief upon the theory that the zoning process is administrative in nature, in which the city council's role is quasi-judicial and reason under this premise that members of the council sit as impartial arbiters and are required to make their decision solely on the basis of the "facts" presented at the hearing on the petition.

This underlying basis is a misconception of the law. Plaintiffs' argument confuses and fails to differentiate between a legislative as distinguished from an adjudicative act. An example of an administrative or adjudicative proceeding in a zoning matter is found where a board is established to hear and decide appeals relative to the application of zoning provisions to individual circumstances. But boards of this nature are not legislative bodies, as explained in *Reddoch v. Smith,* 214 Tenn. 213, 379 S.W.2d 641 (1964). In making the distinction, *Reddoch,* 379 S.W.2d at page 645, states:

> It is not a legislative body, but an administrative body. Legislative authority is not delegated to it. Its decision becomes final on the facts, and an appeal therefrom is authorized to court by way of a common law writ of certiorari. . . .
>
> A board of the kind here under consideration, being an administrative agency, does not have legislative powers and may not review or amend legislatively enacted rules as to uses or amend ordinances under the guise of a variance. This board was created to administer the zoning ordinance but not to formulate and revise it.

The enactment of municipal zoning ordinances in Tennessee has long been viewed as an exercise of legislative police power. *Brooks v. City of Memphis,* 192 Tenn. 371, 241 S.W.2d 432 (1951); *Meador v. City of Nashville,* 188 Tenn. 441, 220 S.W.2d 876 (1949); *Mobile Home City of Chattanooga v. Hamilton County,* 552 S.W.2d 86 (Tenn. App.1976); *Bayside Whse. Co. v. City of Memphis,* 63 Tenn.App. 268, 470 S.W.2d 375 (W.S.1971).

The limitations on the scope of judicial review of legislative exercises of police power were expressed in the early case of *Spencer-Sturla Co. v. Memphis,* 155 Tenn. 70, 290 S.W. 608 (1927), where the Supreme Court, considering a zoning regulation, quoted from the earlier case of *Motlow v. State,* 125 Tenn. 547, 589–590, 145 S.W. 177, 188 (1911):

> It is said that the courts have the right to determine whether such law is reasonable. By this expression, however, it is not meant that they have power to pass upon the act with a view to determining whether it was dictated by a wise or a foolish policy, or whether it will ultimately redound to the public good, or whether it is contrary to natural justice and equity. These are considerations solely for the Legislature. In determining whether such act is reasonable, the courts decide merely whether it has any real tendency

to carry into effect the purposes designed—that is, the protection of the public safety, the public health, or the public morals—and whether that is really the end had in view, and whether the interests of the public generally, as distinguished from those of a particular class, require such interference, and whether the act in question violates any provision of the state or federal Constitution.

A further elaboration is found in *Soukup v. Sell*, 171 Tenn. 437, 104 S.W.2d 830 (1937).

> [T]he wisdom, policy, injurious tendency, or mischievous consequences of a statute or an ordinance are not open to inquiry on behalf of a burdened taxpayer through judicial proceedings. Moreover, the courts cannot consider alleged improper motives or even fraud as the inducing cause to legislative action, either state or municipal. That is so because the courts cannot invade the legislative department to inquire about motives, but must consider legislative acts, whether by assembly or by municipal board, as fair expressions of the public will. At p. 441, 104 S.W.2d at p. 831.

The Supreme Court has repeatedly rejected attempts to explore the motives behind the enactment of zoning ordinances. *White v. Henry*, 199 Tenn. 219, 285 S.W.2d 353 (1955); *Henry v. White*, 194 Tenn. 192, 250 S.W.2d 70 (1952); *Davidson County v. Rogers*, 184 Tenn. 327, 198 S.W.2d 812 (1947).

Plaintiffs cite no Tennessee cases in support of their position but rely upon and cite a number of cases from other jurisdictions wherein the courts disqualified members of various boards on account of pre-hearing statements or commitments. The authorities relied upon are *Daly v. Town Plan & Zoning Commission of Fairfield*, 150 Conn. 495, 191 A.2d 250 (1963); *Barbara Realty v. Zoning Board of Review of Cranston*, 85 R.I. 152, 128 A.2d 342 (1957); *City of Naperville v. Wehrle*, 340 Ill. 579, 173 N.E. 165 (1930); *In re Weston Benefit Assessment Special Road District of Platte County, Missouri*, 294 S.W.2d 353 (Mo.App.1956) and *Saks & Co. v. City of Beverly Hills*, 107 Cal.App.2d 260, 237 P.2d 32 (1951).

The *Barbara Realty* case involved a board of zoning review whose function was determined by the Rhode Island Supreme Court to be quasi-judicial in nature. The *Weston Benefit* case involved the action (non-zoning) of a Missouri county court which was denominated an administrative agency by the Missouri Constitution. The legal basis for the disqualification in that case was a specific statutory prohibition against participation by interested members in the decision making process. The *Daly* case was decided upon the basis of a similar statute. *Naperville* involved participation in a quasi-judicially appointed board of assessment by an interested party. The *Saks* case was subsequently overruled by the California Supreme Court in *City of Fairfield v. Superior Court of Solano County*, 14 Cal.3d 768, 122 Cal.Rptr. 543, 537 P.2d 375 (1975).

The California court had occasion in *Fairfield* to consider efforts to disqualify several members of a city council from consideration of a zoning matter because of statements made on the issue during the course of an election campaign. In rejecting the challenge, the court quoted from the case of *Wollen v. Fort Lee*, 27 N.J. 408, 142 A.2d 881 (1958):

> [I]t would be contrary to the basic principles of a free society to disqualify from service in the popular assembly those who had made pre-election commitments of policy on issues involved in the performance of their sworn legislative duties. Such is not the bias or prejudice upon which the law looks askance. There is no showing that the minds of these councilmen were not open to conviction in the just fulfillment of what they severally conceived to be a solemn obligation to the community. Otherwise, representative democracy would be subverted, and local self-government denied. Here, for example, the local legislative exercise of the constitutionally-secured land-use control as a police function would be rendered nugatory for the time being by the election of municipal governors whose revealed views on policy had coincided with the popular will and had evoked popular approval. . . . The contrary rule of

action would frustrate freedom of expression for the enlightenment of the electorate that is of the very essence of our democratic society; it would be a negation of the principle of popular sovereignty. 142 A.2d at 888.

Plaintiff, Fiser's conduct prior to the hearings before the city commission is anomalous with the position he takes before the courts. The record reveals he sought out the members of the council prior to the hearings in an effort to obtain commitments for the rezoning of his property and according to his perception did, in fact, obtain pre-hearing commitments. The foundation of his present complaint is that others engaged in conduct of a similar nature but ultimately were more successful than he in the political process, which graphically portrays the political realities present in the legislative processes.

For the court to go behind the face of an enactment and probe the motives of those entrusted with legislative authority for the purpose of rescinding an enactment would involve the court in the legislative processes reserved to the legislative branch of government under our constitutions. Justice Holmes in *Bi-Metallic Co. v. Colorado*, (1915) 239 U.S. 441, 445, 36 S.Ct. 141, 142, 60 L.Ed. 372, 375, observed:

> General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule.

The plaintiff has apparently exercised this power to the extent of his capabilities. In the case *sub judice*, in a period of less than one year, plaintiff, Fiser, presented the merits of his rezoning request on a personal basis to the members of the council, prior to and at each hearing, but his appeal to the courts to reverse this legislative judgment, on the basis of motives of the individual councilmen in exercising their legislative prerogatives by casting their votes, is misdirected.

The denial of plaintiffs' request for rezoning was reasonable and within the legislative discretion of the council. The recommendation of the metropolitan planning commission was against plaintiffs' request for rezoning; the property is part of a large area zoned for single family dwellings, which is subject to statutory restrictions along Kingston Pike under the Scenic Routes System Act,[3] and other considerations the council could take into account included traffic control and long-range plans for the city.

Under the court's scope of review, we find plaintiffs' assignments of error to be without merit. *See Brooks v. City of Memphis*, 192 Tenn. 371, 241 S.W.2d 432 (1951). The Chancellor's dismissal of plaintiffs' petition is affirmed as modified herein and costs incident to the appeal are taxed against the plaintiffs.

PARROTT, P. J. (E.S.), and SANDERS, J., concur.

---

3. Kingston Pike is designated a scenic route "from its intersection with Concord Street and Neyland Drive in the City of Knoxville, westward to the intersection of Kingston Pike with Lyons View Drive." *T.C.A.*, § 54–2514.