CITYWIDE PARENTS COUNCIL, INC. & others[1] *vs.*
SCHOOL COMMITTEE OF BOSTON
(and a companion case[2]).

Nos. 89-P-976 & 89-P-977.

Suffolk. August 24, 1989. — August 25, 1989.

Present: ARMSTRONG, PERRETTA, & KASS, JJ.

*School and School Committee,* Closing of school. *Public Board. Political
Matter. Boston.*

Where the Boston school committee, without prior public consultation as re-
quired by § 31.1 of its rules, voted to close certain school facilities and,
thirteen days later, held a public hearing followed by a second vote to
approve the school closing plan, this court concluded that the later vote
was valid and that the hearing procedure was not fatally tainted by
whatever preconceived opinion about the closings any members of the
school committee may have held. [740-744]            ,

CIVIL ACTION commenced in the Superior Court Department
on August 2, 1989.

The case was heard by *David M. Roseman,* J.

*John S. Stadler,* Special Assistant Corporation Counsel
(*Karen E. Evans,* Special Assistant Corporation Counsel, with
him) for School Committee of Boston.

*Cornelius J. Moynihan, Jr.* (*Jonathan P. Cooke* with him)
for Citywide Parents Council, Inc.

*Matthew E. Dwyer* for Boston Teachers Union, Local 66,
AFT, AFL-CIO.

KASS, J.  Pressed by fiscal constraints, the school committee
of Boston on August 7, 1989, voted for closings and consolida-

---

[1] Jamaica Plain Area Planning Action Council, Inc., Mildred Augustine,
and Marta Solis Rodriques.

[2] Boston Teachers Union, Local 66, AFT, AFL-CIO & others *vs.* School
Committee of Boston & another.

tions which affected ten public schools.[3] Those closings and consolidations were, in the main, to go into effect for the 1989-1990 school year. The plaintiffs urge that in the course of taking this action the school committee so violated its own rules for public consultation that the resulting action was rendered unlawful.

A Superior Court judge, after trial, concluded that the committee's decision making process had, indeed, been fatally tainted by failure to provide a "meaningful hearing." By judgment entered August 22, 1989, he enjoined the closings and consolidations for which the committee had voted on August 7. In response to the committee's motion, we heard the committee's appeal on an expedited basis. School is scheduled to open in Boston on September 7, 1989, and there is a powerful public interest in swift resolution of the controversy. Between 3,500 and 4,000 students will be affected by the closings and consolidations. We decide that the school committee acted lawfully and that the injunction is to be vacated.

In approaching the case it is well to bear in mind the broad management powers and duties imposed on school committees in the management of public schools. G. L. c. 71, §§ 1, 37, 68. *McDevitt* v. *School Comm. of Malden*, 298 Mass. 213, 214 (1937). *Davis* v. *School Comm. of Somerville*, 307 Mass. 354, 362 (1940). *Molinari* v. *Boston*, 333 Mass. 394, 395 (1955). *Boston Teachers Union, Local 66* v. *School Comm. of Boston*, 386 Mass. 197, 212 (1982). Those powers, with a large measure of discretion, include the power to close schools. *Jantzen* v. *School Comm. of Chelmsford*, 332 Mass. 175, 178 (1955). *School Comm. of Springfield* v. *Board of Educ.*, 362 Mass. 417, 440-441 (1972). The plaintiffs acknowledge the plenary powers of the committee but insist they do not constitute a dispensation from compliance with the committee's own rules.

---

[3] Jamaica Plain High School, Umana High School, Madison Park High School, Holmes Middle School, Mackey Middle School, Parkman Elementary School, Perry Elementary School, Barron Assessment Center, English High School, Boston Technical High School. English High School and Boston Technical High School were among the surviving schools.

Section 31.1 of the Rules of the Boston School Committee is the rule in question. It provides that:

"In the event that any school facility is recommended for closing by the school department administration, the appropriate subcommittee will meet in the community in which such facility is located to hear testimony from individuals and groups relative to the advisability of closing such facility."

When the rule was adopted by the committee in April, 1984, the dual purposes envisioned were to inform the public about what had moved the committee to a decision to close schools (invariably unpalatable to the neighborhood affected) and "to get some sense back from the community of what potential harm exists in the closing of the school."

Closing of the schools with which this case is concerned first surfaced on July 25, 1989, in the form of a recommendation delivered to the president of the school committee by the superintendent of schools about an hour before the scheduled start of a regular meeting of the school committee. The committee voted nine to four in favor of the closings and determined to hold the requisite public hearing *after* the decision had been made. That hearing was originally scheduled for August 12.

Meanwhile, on August 2, this litigation had begun. Upon the entirely sensible suggestion of the trial court judge that an after-the-fact hearing could scarcely satisfy the rule (and perhaps, by this time, also instructed by counsel), the committee rescheduled the public hearing to August 7, with a meeting of the school committee immediately to follow, at which the committee might decide, in proper sequence, whether to adopt the school closing recommendation.

The August 7 meeting was held at the Madison Park Campus, was widely attended, and lasted some four hours. Whatever defects there were in notice formalities, the judge found that interested parties were informed and, with exceptions not material, were present. At 10:20 P.M. the hearing concluded and a forty-minute recess ensued, during which those school com-

mittee members still in the hall debated the proposed closings with members of the public. Nine members were present at 11 P.M. when the school committee convened a special meeting to consider again the closing plan. They approved it eight-to-one.

The trial judge found as facts that: the school committee had no intention after July 25, 1989, to reconsider its action after the public hearing; the statement of a school committee member at the August 7 hearing that "we feel we have no alternative"[4] to the closings was probative of the committee members' closed mind set; and that the August 7 hearing was "not designed to be a meaningful one, not one which would satisfy the purposes of § 31.1." If the members of the committee entered the hearing room with preconceived opinions about the outcome, the judge reasoned, the August 7, 1989, hearing was, perforce, a sham. The committee had devised a scheme to give the appearance of compliance with § 31.1, and the public was accorded nothing more than a chance to exercise their vocal cords.

For purposes of the appeal, the school committee concedes that the members entered the hearing room on August 7 with the intent to stick by their guns on the school closing question.[5] Prehearing convictions and expressions of those convictions on the public policy points in issue may be allowed the members of an elected body charged with making political decisions. *Moskow* v. *Boston Redev. Authy.*, 349 Mass. 553, 565 (1965). Elected officials often take positions prior to hearing and deliberation at a hearing. In that fashion elected officials typically inform their constituents and, on occasion, provoke a response which warns them of the political consequences of a particular stand. Even strong expressions of view do not foreclose the

---

[4] This was a reference to the budgetary pressures which the school committee faced. The Boston school committee cannot overspend its charter appropriation. See *Board of Educ.* v. *Boston,* 386 Mass. 103, 110-112 (1982).

[5] The committee is constrained to make this concession as no transcript is available at this time which would enable the court to review whether any material findings made by the trial judge are clearly erroneous.

possibility that a hearing may expose some consideration or consequence which changes previously convinced minds.

The fallacy of the plaintiffs' view that a prehearing mind set by school committee members foreclosed a "meaningful" hearing is exposed by the reflection that the principle would be equally applicable to a hearing held in proper sequence and with prehearing formalities impeccably observed. Yet it cannot be, nor should it be, that elected officials must maintain a vow of silence before a hearing on a hot subject. See *Wollen* v. *Fort Lee*, 27 N.J. 408, 421 (1958); *Fairfield* v. *Superior Court*, 14 Cal. 3d 768, 781 (1975); *Izaak Walton League of America* v. *Monroe County*, 448 So. 2d 1170, 1172 (Fla. Dist. Ct. App. 1984). *Fiser* v. *Knoxville*, 584 S.W.2d 659, 662-663 (Tenn. App. 1979). As to the lesser hearing standards applicable to political decisions, see *Hayeck* v. *Metropolitan Dist. Commn.*, 335 Mass. 372, 374-375 (1975); *Natick Trust Co.* v. *Board of Bank Incorporation*, 337 Mass. 615, 617 (1958); *Miller* v. *Alcoholic Beverages Control Commn.*, 340 Mass. 33, 35 (1959); *Reid* v. *Acting Commr. of the Dept. of Community Affairs*, 362 Mass. 136, 140-144 (1972); *Dubois* v. *Selectmen of Dartmouth*, 2 Mass. App. Ct. 674, 677-678 (1974); *Pronghorn, Inc.* v. *Licensing Bd. of Peabody*, 13 Mass. App. Ct. 70, 72-73 (1982). See also on this point *Newburyport Redev. Authy.* v. *Commonwealth*, 9 Mass. App. Ct. 206, 226 (1980). In the absence of constitutional or statutory violations, the remedy for unwise policy choices is not judicial intervention but the ballot box.

Indeed, even in the administrative process, if the proceedings involve rule making rather than adjudication of individual disputes, there is no requirement that the decision maker be without a predisposition. One may assume that the regulatory body holding hearings on a proposed rule has a point of view which may, however, be altered by facts and reason. "[T]he rule making process, being legislative in nature, does not compel an absolutely indifferent decisionmaker." *Borden, Inc.* v. *Commissioner of Pub. Health*, 388 Mass. 707, 735, cert. denied sub nom. *Formaldehyde Inst., Inc.* v. *Frechette*, 464 U.S. 936 (1983). Cf. *Cambridge Elec. Light Co.* v. *Department of*

*Pub. Utils.*, 363 Mass. 474, 486-487 (1973). This contrasts with the adjudicatory process, in which the participants are sometimes entitled to an impartial decision maker. *Borden, Inc.* v. *Commissioner of Pub. Health, supra.*[6]

As the plaintiffs would have it, once the school committee voted on July 25 to close schools before hearings were held as required by § 31.1, the process had become fatally flawed because the committee had locked itself into a policy position. It is not necessary to decide whether an elected body making political decisions is bound to the same extent as an administrative agency to comply with its own rules. See *DeLomba's Case*, 352 Mass. 598, 603-604 (1967); *School Comm. of Danvers* v. *Tyman*, 372 Mass. 106, 115 (1977); *Niles* v. *Boston Rent Control Administrator*, 6 Mass. App. Ct. 132, 135 (1978); *Pavadore* v. *School Comm. of Canton*, 19 Mass. App. Ct. 943, 944 (1985); *Crawford* v. *Cambridge*, 25 Mass. App. Ct. 47, 49-50 (1987). Compare *Coleman* v. *Louison*, 296 Mass. 210, 213 (1936); *E.F. Semas Trucking, Inc.* v. *Mayor of Taunton*, 7 Mass. App. Ct. 907, 908 (1979), which deal with the power of an elected municipal body to waive its rules. An elected school committee, as we have emphasized, is essentially a political body. In certain contexts, such as the discharge of personnel, it acts in a quasi judicial mode and is held to the procedures prescribed by statute, its own rules, or a collective bargaining agreement. At all events, the committee in this instance recognized its failure to adhere to its self-prescribed procedures and took steps to take a fresh vote on the school closings after hearing. It is surely not acceptable to suppose that the committee, by its initial misstep, had inflicted upon itself an incurable wound which no later ministration could heal. Such a principle of incurable error would too often paralyze decision making processes.

---

[6] Even in adjudicatory proceedings, the decision maker in certain circumstances may be allowed to come into the hearing with something less than a clean slate. See *Raymond* v. *Board of Registration in Medicine*, 387 Mass. 708, 717 (1982). See, generally, the discussion of the significance of predisposition depending on whether the administrative process involves policy or adjudicative facts in 3 Davis, Administrative Law § 19.2 (2d ed. 1980).

The judgment is reversed. The injunction is vacated. A new judgment is to be entered declaring that the school committee's vote on August 7, 1989, relating to school closings was within its authority and was not invalid.

*So ordered.*