# PEOPLES BANK OF VAN LEER, TENNESSEE, Appellant, v. M. A. BRYAN, Superintendent of Banks of the State of Tennessee, Appellee.—397 S.W.(2d) 401.

Middle Section. August 27, 1965.

Certiorari Denied by Supreme Court December 20, 1965.

Ray Stuart, Dickson, for appellant.

Thomas E. Fox, Assistant Attorney General, Nashville, for appellee.

PURYEAR, J. On the 11th day of September, 1963, the appellant filed with M. A. Bryan, in his official capacity as Superintendent of Banks, of the Department of Banking of the State of Tennessee, an application for permission to establish a branch bank in the East Hills section of the Town of Dickson, in Dickson County, in which County the main office of such bank is located at Van Leer. On December 11, 1963, the appellee refused such application and so notified the appellant of its refusal on that date, and, thereafter, appellant filed its petition in Chancery Court seeking a review of the action of the appellee in refusing its application to establish a branch bank.

The petition alleged, among other things, that it was ''filed under the authority of Chapter II, Title 45, Tennessee Code Annotated, and Chapter IX, Title 27, Tennessee Code Annotated, and particularly Sections 45-208 to 45-211, inclusive, of the Tennessee Code Annotated, for the purpose of review of the decision of defendant on the application of petitioner.''

The writ was granted and in response to the petition the appellee filed his answer and with it exhibited a copy of the proceedings incidental to his investigation refusing application of the appellant to establish a branch bank.

Thereafter, on March 31, 1964, the deposition of Mr. Wayne Sensing, President of the appellant bank, was taken and filed in the cause as additional evidence, this being the only additional evidence filed in Chancery Court.

The case came on to be heard by the Chancellor and on July 15, 1964, after hearing the case upon the record filed and the deposition of Mr. Sensing, the Chancellor rendered a memorandum opinion which is as follows:

"This petition for certiorari must be dismissed at the cost of the petitioner.

T.C.A. 45-211 provides:

'No Branch bank shall be established until approved by the superintendent of Banks.'

T.C.A. 45-206 in part provides:

'The superintendent of Banks shall thereupon *ascertain from the best sources of information* at his command, and by *such investigation* as he may deem necessary. * * *'

This investigation was made (Exhibit 4-1) for the Superintendent along with the voluminous information contained in the application (Exhibit 2).

Exhibit 1C reveals that the petitioner was unsure as to the location of the proposed branch bank. In view of this the Superintendent notified the petitioner,

'If you desire to establish a branch at another location please advise so new application can be sent you.'

An application was not filed in response thereto. From this record it is my opinion that the Superintend-

ent of Banks did not act in an arbitrary or illegal manner.

I do not think the Act in question contemplates a hearing be held and strict rules of evidence be applied at the hearing. The Act merely provides for an investigation by the Superintendent of Banks and that he either approve or disapprove the application.

Decree accordingly.

Ned Lentz, Chancellor

This July 15, 1964.'' (Tr. p. 11)

Pursuant to this opinion, a decree was entered by the Chancellor on August 5, 1964, dismissing the petition of the appellant, after a petition to rehear had been filed and overruled.

On August 13, 1964, appellant filed a motion for a new trial, which was overruled by the Chancellor, and the appellant has perfected its appeal to this Court and assigned error.

The appellant has filed seven assignments of error which we quote verbatim as follows:

"1. The Court below erred in finding and holding, 'that the petitioner was unsure as to the location of the proposed branch bank', as only one location was applied for, and an option on a lot for the construction of the bank building had been obtained at only one location. (Trans. p. 11 and p. 15.)

2. The Court below erred in holding that the Superintendent of Banks did not act arbitrarily and illegally in denying petitioner's application to establish a branch bank at the location applied for. (Trans. p. 11 and p. 15.)

3. The Court erred in failing to weigh the evidence and determine the facts by the preponderance of the proof as required by statute (Sec. 27-911 Tenn.Code Annotated.)

4. The Court below erred in holding that the action of the Superintendent of Banks was not outside of the contemplation of the statute for establishment of branch banks. (Trans. p. 15.)

5. The Court below erred in holding that the statute (Sec. 45-206 Tenn. Code Annotated) 'merely provides for an investigation by the Superintendent of Banks and that he either approve or disapprove the application', without a basis of fact supported by competent evidence, upon which to base his decision of approval or disapproval, thereby giving the Superintendent of Banks arbitrary powers of life or death over establishment of branch banks. (Trans. p. 15.)

6. The Court below erred in holding, in substance that the statute (Code Sec. 45-206 Tenn. Code Annotated) which provides for investigation for establishing of new banks, applies and contemplates such or the same investigation for establishment of branch banks under Sec. 45-211 Tenn. Code Annotated. (Trans. p. 15.)

7. The Court below erred in holding, in substance, that Sec. 45-211 Tenn.Code Annotated, as amended by Chapter 97 Acts of 1951, provides and contemplates the same requirements and investigation for establishment of branch banks as required for establishment of new banks under Sec. 45-206 Tenn.Code Annotated. (Trans. p. 15.) '' (Pp 5 and 6 appellant's brief)

With all due deference to learned counsel for the appellant, we think only two questions are now before this Court in this case and a determination of these two questions will answer all of the assignments of error. First: Was the appellant entitled to a retrial in Chancery Court of the issues which were determined by the Superintendent of Banks resulting in the refusal of the application of appellant to establish a branch bank?

In its petition, the appellant specifically sought a review under the provisions of Sections 27-901 to 27-911, Tennessee Code Annotated, inclusive. Appellant contends that under the provisions of Section 27-911, Tennessee Code Annotated, it was entitled to a trial de novo in Chancery Court of the issues involved in the application which was denied by the appellee, citing Anderson v. City of Memphis, 167 Tenn. 648, 72 S.W.(2d) 1059. However, we do not agree that Anderson v. City of Memphis, holds that the appellant was entitled to a retrial of the issues in Chancery Court, but in that case the Supreme Court implied that a retrial of the issues was not authorized in a case of this kind as shown by the following language of the Court:

"There is, however, no support for the contention that this language of the statutes has the effect of overthrowing the established practice by subjecting the merits of every action of statutory commissions and boards to judicial review, substituting the discretion of the circuit or chancery courts for that of administrative bodies. To so construe the statute would be to broadly extend the judicial power into a field heretofore considered the proper domain of the executive or administrative powers of the State government." An-

derson v. City of Memphis, supra, p. 653, 72 S.W.(2d) p. 1061.

In the later case of Hoover Motor Express Co. v. Railroad and Public Utilities Commission, 195 Tenn. 593, 261 S.W.(2d) 233, the Supreme Court held as follows:

"(3, 4) Code sections 9008-9018,[1] without prior legislative sanction, were enacted as a part of the Code of 1932. So far as their language shows, these sections apply both to the procedure under petitions for the common law writ of certiorari, Code sec. 8989, and the statutory writ of certiorari, Code sec. 8990. Chapter 261, Public Acts of 1951, amends Code sec. 9014 [2] without undertaking to distinguish the effect it may have on the procedure under the common law writ, from that under the statutory writ. For the determination of the present controversy and decision of this case, it is only necessary for us to determine the effect the amendment had on procedure under the common law writ of certiorari. As we have stated above, the common law writ does not bring up for determination, any question except the question whether the inferior board or tribunal (1) has exceeded its jurisdiction, or (2) has acted illegally, arbitrarily, or fraudulently. The effect of the amendatory Act was, therefore, only to require the Chancellor to review the evidence which had been introduced before the Commission, and to determine by a preponderance of the evidence, whether the Commission had acted beyond its jurisdiction, arbitrarily, fraudulently or illegally. Since this was the long established limit of appropriate judicial review under the common law writ, the amendatory Act

---

[1] Sections 27-901—27-911 T.C.A.

[2] Sec. 27-911 T.C.A.

of 1951 could have no further or greater effect on procedure under the common law writ, whatever may be the effect of the amendment on a proceeding under the statutory writ, Code sec. 8990.'' Hoover Motor Exp. Co. v. R. R. & Pub. Util., supra.

Therefore, we think the Hoover case definitely settles the appellant's contention that it was entitled to a retrial in Chancery Court of the issues involved, and that case definitely holds contrary to the contention of the appellant.

Consequently, we hold that the appellant was only entitled to have its case reviewed by the Chancellor, in the course of which review, the Chancellor should consider the evidence contained in the record and also the additional evidence submitted by the appellant and determine from the preponderance of such evidence whether the Superintendent of Banks acted arbitrarily or illegally. Apparently, this was done by the Chancellor, as shown by his decree.

The granting or the withholding of permission to establish a branch office of a bank is not a judicial function, but is purely an administrative function. Therefore, to hold that the appellant is entitled to have a retrial of the issues in Chancery Court would be to completely emasculate the power of the Superintendent of Banks, and certainly the courts cannot constitutionally perform these administrative functions. The procedural requirements of 27-901 et seq. must be read in this light and may be followed only to the extent possible in determining the legal validity of the actions of the Superintendent of Banks.

These procedural requirements cannot be used as an excuse for the courts to inquire into the correctness

of the administrative decision. A court can consider the evidence heard before the administrative official for the sole purpose of determining the legal question of whether there was any substantial reason or fact to support the findings or order of the administrative official.

■ Any additional evidence introduced in the court granting certiorari must necessarily be limited to the legal question presented, to-wit; whether the administrative agency or the administrative official exceeded his or its jurisdiction or acted illegally or arbitrarily. Hoover Motor Express Co. v. R. R. & Pub. Util. at p. 606, 261 S.W.(2d) 233. An excellent and enlightening statement on the difference between the functions of administrative agencies and courts was made by Mr. Justice Frankfurter in F. C. C. v. Pottsville Broadcasting Co., 309 U.S. 134, 60 S.Ct. 437, 84 L.Ed. 656:

"Courts, like other organizations, represent an interplay of form and function The history of Anglo-American courts and the more or less narrowly defined range of their staple business have determined the basic characteristics of trial procedure, the rules of evidence, and the general principles of appellate review. Modern administrative tribunals are the outgrowth of conditions far different from those. To a large degree they have been a response to the felt need of governmental supervision over economic enterprise —a supervision which could effectively be exercised neither directly through self-executing legislation nor by the judicial process. That this movement was natural and its extension inevitable, was a quarter century ago the opinion of eminent spokesmen of the law. Perhaps the most striking characteristic of this movement has been the investiture of administrative agencies

with power far exceeding and different from the conventional judicial modes for adjusting conflicting claims—modes whereby interested litigants define the scope of the inquiry and determine the data on which the judicial judgment is ultimately based. Administrative agencies have power themselves to initiate inquiry, or, when their authority is invoked, to control the range of investigation in ascertaining what is to satisfy the requirements of the public interest in relation to the needs of vast regions and sometimes the whole nation in the enjoyment of facilities for transportation, communication and other essential public services. These differences in origin and function preclude wholesale transplantation of the rules of procedure, trial and review which have evolved from the history and experience of courts. Thus, this Court has recognized that bodies like the Interstate Commerce Commission into whose mould Congress has cast more recent administrative agencies, 'should not be too narrowly constrained by technical rules as to the admissibility of proof,' Interstate Commerce Commission v. Baird 194 U.S. 25, 44, 24 S.Ct. 563, 568, 569, 418 L. Ed. 860 [869], should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties. Compare New England Divisions Case (Akron, C. & Y. R. Co. v. United States), 261 U.S. 184, 43 S.Ct. 270, 67 L.Ed. 605. To be sure, the laws under which these agencies operate prescribe the fundamentals of fair play. They require that interested parties be afforded an opportunity for hearing and that judgment must express a reasoned conclusion. But to assimilate the relation of these administrative bodies and the courts to the relationship between lower and upper

courts is to disregard the origin and purposes of the movement for administrative regulation and at the same time to disregard the traditional scope, however far-reaching, of the judicial process. Unless these vital differentiations between the functions of judicial and administrative tribunals are observed, courts will stray outside their province and read the laws of Congress through the distorting lenses of inapplicable legal doctrine." F. C. C. v. Pottsville Broadcasting Co., supra, 60 S.Ct. at pp. 441 and 442, 84 L.Ed. at pp. 661 and 662.

"It is always easy to conjure up extreme and even oppressive possibilities in the exertion of authority. But courts are not charged with general guardianship against all potential mischief in the complicated tasks of government. The present case makes timely the reminder that 'legislatures are ultimate guardians of the liberties and welfare of the people in quite as great a degree as the courts.' Missouri, Kansas & Texas Ry. Co. of Texas v. May, 194 U.S. 267, 270, 24 S.Ct. 638, 639, 48 L.Ed. 971 [972]. Congress which creates and sustains these agencies must be trusted to correct whatever defects experience may reveal. Interference by the courts is not conducive to the development of habits of responsibility in administrative agencies." F. C. C. v. Pottsville Broadcasting Co., supra, 60 S.Ct. at p. 443, 84 L.Ed. at p. 663.

██ In our opinion, it makes no difference whether the Superintendent of Banks acquired facts upon which he based his decision by an investigation or by a hearing, so long as the evidence shows his decision was based upon some material fact or facts, and was not arbitrary or illegal. The manner in which the facts are obtained, whether by letters, affidavits, depositions or oral testi-

mony, is a matter which is left to the discretion of the Superintendent, so long, of course, as he observes the basic requirements of private as well as public interest.

The second question which is presented by this appeal is: Does the evidence preponderate against the conclusion of the Chancellor that the Superintendent of Banks did not act arbitrarily or illegally in refusing appellant's application to establish a branch bank?

Under the provisions of Section 27-303, Tennessee Code Annotated, the decree of the Chancellor comes to us with a presumption of its correctness, unless the preponderance of the evidence is otherwise, and for the reasons heretofore stated by us in this opinion, all of the matters contained in the record are considered by us as evidence.

The investigation which was made pursuant to the application filed by appellant in this case was made by Mr. B. C. Ferrell, an examiner in the State Banking Department. The examiner's report is shown on pages twenty-two to thirty-two in the bill of exceptions. In this report, the examiner stated certain conclusions which he formed as a result of his investigation, which conclusions are briefly as follows:

"While there is thought to be some need for more progressive banking in the community, the need is not regarded as serious enough to warrant the bringing in of a third bank. (B. of E. p. 31)

"It is felt that little would be gained by allowing the applicant bank to put a branch in Dickson, especially in view of the intentions of the First National Bank. If the smaller rural banks are to be permitted to branch into the large towns because of a possible loss

of business to banks in those areas, then the larger places seemingly would become overcrowded with banking facilities. It is believed, however, in this particular case that if the plans of the First National Bank are not approved or are scrapped, and the other bank makes no effort to establish a branch, the applicant bank's proposal possibly could be re-examined, but at this juncture, it is the examiner's thought that the banking status quo in Dickson should not be upset by a third bank and that subject application should be disapproved." (P. 32 B. of E.)

By reference to the intentions of the First National Bank, the examiner apparently meant the application filed by the First National Bank of Dickson, with the Comptroller of the Currency, U. S. Treasury, for permission to establish a branch in this same East Hills section of the Town of Dickson.

This intention is stated in a letter from Mr. E. H. Meeks, Cashier of the First National Bank of Dickson, addressed to the Superintendent of Banks, dated November 19, 1963, which contains the following statement:

"First, of all, we wish to advise that the First National Bank Dickson, Tenn., has an option on a lot fronting two hundred feet on the North side of East College Street (Highway 70-East) with a depth of three hundred feet. This lot is only a few hundred feet west of the proposed location of the Van Leer Branch. We also wish to advise that our plans call for the erection of a new Main Office Building at a cost of some two hundred thousand ($200,000.00) dollars. Our present location will be continued and known as, the Main Street Branch of the First National Bank, Dickson." (P. 33-B B. of E.)

In this same letter, the Cashier of First National Bank makes the following statement:

"With Dickson County's potential what it is and with the banking and lending institutions already established therein, we are of the opinion that the citizens of our county are afforded the best financial facilities of any section of the State." (33-C B. of E.)

The record also contains a letter from Mr. Carney Nicks, President of the Bank of Dickson, addressed to the Superintendent of Banks, dated November 14, 1963, in which the following statement is made:

"This matter has been discussed and it is the considered opinion of my Board of Directors that the financial needs of the people of the Dickson area are now being adequately met, and that the bank patrons are receiving efficient services." (P. 33-A B. of E.)

In the two foregoing letters addressed to the Superintendent of Banks, Mr. Nicks and Mr. Meeks both state facts upon which they based their conclusions expressed in the language above quoted.

In the answer filed by the appellee, Superintendent of Banks, the appellee alleges that "since the filing of the petition in this cause, a branch of the First National Bank of Dickson, Tennessee, has been authorized by the Comptroller of the Currency, U. S. Treasury." (Tr. p. 8)

This allegation in the answer of the appellee is not denied anywhere in the record.

Certainly all of these facts, together with other facts, which appear in the record, but not herein specifically mentioned and set forth, were considered by the Chancellor and are now considered by this Court and, in

our opinion, the record shows that the denial of the application of appellant to establish a branch bank was not arbitrary or illegal, and, therefore, the evidence does not preponderate against the decree of the Chancellor.

For the reasons herein set forth, all assignments of error are overruled and the decree of the Chancellor is affirmed with costs.

Shriver and Humphreys, JJ., concur.