BAYSIDE WAREHOUSE COMPANY, a corporation, Appellee, v. CITY OF MEMPHIS, a municipal corporation et al., Appellants.
—470 S.W.2d 375

Western Section. March 8, 1971.

Certiorari Denied by Supreme Court September 7, 1971.

James M. Manire, City Attorney, and Myron A. Halle, Jr., Assistant City Attorney, Memphis, for appellants.

Walter P. Armstrong, Jr., Memphis, for appellee; Armstrong, Allen, Braden, Goodman, McBride & Prewitt, Memphis, of counsel.

MATHERNE, J. The City Council of the City of Memphis rezoned twenty-three acres of land owned by Bayside Warehouse Company from M-2 Industrial to C-3 Commercial. The owner petitioned the circuit court for common law writ of certiorari. The Trial Judge held the action of the City Council was without proper consideration of the present uses of the property; was arbitrary in nature, and unlawful.

The City on appeal attacks the holding of the Circuit Court, and also claims that court erred in receiving additional testimony at the hearing for certiorari.

The property in question is located on Mud Island at a position just across the Wolf River from downtown Memphis. Mud Island is a strip of land of several hundred acres and extends from its southern tip for a distance of over two miles to its northern boundary at the Wolf River Diversion Channel. Mud Island is bounded on the east by the Wolf River and on the west by the Mississippi River. Its width at the northern boundary is a few thousand feet, and it generally narrows and tapers to its southern tip.

Prior to 1965 virtually all of Mud Island, including about sixty-nine acres then owned by Bayside Warehouse Company, was in the flood plain of the Mississippi River and subject to overflow. During the years 1965 thru 1968 the U.S. Corps of Engineers carried out a filling operation on Mud Island. That agency reached an agreement

with Bayside to appropriate a portion of its property and to fill the remainder, which resulted in Bayside having twenty-three acres of land above flood level after the project was completed.

On August 18, 1965 the City of Memphis annexed the Frayser community, including the northern portion of Mud Island. There is no present or planned bridge to connect Mud Island with the City of Memphis. The island is accessible only by boat, and by an unimproved dirt road entering along a fill at the Wolf River Diversion Channel.

As result the plans and project of the U.S. Corps of Engineers, and the annexation of the Frayser community, a flurry of activity became evident by various governmental agencies as to the proper utilization of what may be called an improved Mud Island.

On July 10, 1967 the Shelby County Quarterly Court submitted to the Shelby County Conservation Board for its study and recommendation a proposal for the establishment of "a greenway public park" along the east bank of the Mississippi River. On January 4, 1968 the Memphis Park Commission passed a resolution concurring in the plans for development of such a "greenway."

On January 26, 1968 the Shelby County Conservation Board submitted a report to the Memphis and Shelby County Planning Commission indicating an intention to acquire a strip of land along the east bank of the Mississippi River extending from the low water mark eastwardly for a distance of 450 feet, along the full length of Mud Island, as a part of the Mississippi River Green-

way Project. The report also indicated the Memphis and Shelby County Planning Commission and Shelby County Conservation Board were preparing a joint application to the Bureau of Outdoor Recreation for financial assistance to purchase the property.

On April 4, 1968 the Memphis and Shelby County Planning Commission initiated what is called Study No. 35, which involved a comprehensive rezoning of the West Frayser area recently annexed and including also the greater portion of Mud Island. On April 18, 1968 the Planning Commission approved Study No. 35, and recommended to the City Council that a 450 foot strip of land, measured from the low water mark of the Mississippi River, and extending from the Wolf River Diversion Channel to the southern tip of Mud Island, be zoned Agricultural and Agricultural (Flood). Study No. 35 recommended changes in the zoning of most all property on Mud Island, including the rezoning of the Bayside Warehouse Company twenty-three acres from M-2 Industrial to C-3 Commercial, reserving the 450-foot strip of the property bordering the Mississippi River to Agricultural and Agricultural (Flood).

At an adjourned meeting of the City Council, held on September 10, 1968, and after lengthy public hearings on the issue, the City Council in effect adopted Study 35, and approved on third and final reading Ordinance No. 181 effecting the rezoning as therein set out.

The Trial Court had before it four petitions for certiorari by landowners whose Mud Island properties bordered the Mississippi River. The Court struck down as confiscatory that portion of Ordnance 181 which zoned as

Agricultural and Agricultural (Flood) a strip of these properties 450 feet wide along the east bank of the Mississippi River. The City of Memphis does not appeal from that portion of the order of the Trial Court. The Trial Court held the rezoning of the balance of the other three properties from M-3 Heavy Industry to M-1 Light Industry to be reasonable and within the legislative authority of the City Council.

The only portion of the order of the Trial Court now before this Court is that portion which struck down the rezoning of the balance of the Bayside Warehouse property (that property east of the 450 foot strip) from M-2 Industrial to C-3 Commercial. The finding of the Trial Court on this issue is supported by the record from the City Council and we adopt that finding which is as follows:

"REZONING OF BAYSIDE WAREHOUSE PROPERTY FROM M-2-INDUSTRIAL to C-3-COMMERCIAL

"With respect to the rezoning of the Bayside Warehouse property from M-2 Industrial to C-3 Commercial, a somewhat different situation obtains. This property borders on the Mississippi River on the west and Wolf River on the east, and is located near the southern end of the Island. At this time this property is inaccessible except by water. The only connection with the mainland is by way of a levy or fill at the site of the Wolf River Diversion Channel, at the north end of the Island. The only means of transportation on the Island is by way of an unimproved dirt road along the west bank of the Island.

"With access to the Mississippi River on the west and Wolf River to the east, this property is ideally suited for river oriented industry. With practically no access to the mainland, it is difficult to conceive of any commercial use attributable to the property at this time. The record does not suggest any such use.

"It appears, however, that in zoning this property C-3 Commercial, the Planning Commission and the City Council envisioned the use of this property for high-rise apartments and office buildings overlooking the river, and for retail commercial establishments, so as to present an attractive approach to the downtown area. This may be all well and good for some time in the far distant future, but for the present, with virtually no access by land, and no prospects for the construction of a causeway or other means of access to and from the mainland in the foreseeable future, a commercial zoning of this property would deprive the owner of any beneficial use whatever.

"Section 138 of the Charter of the City of Memphis provides that zoning regulations 'shall be made with reasonable consideration, among other things, to the character of the district, its peculiar suitability for particular uses, the conservation of property values, and the direction of building development.' The rezoning of this property as proposed does not conform to any of these considerations.

"As previously pointed out in this memorandum opinion, when regulation goes so far as to deprive an owner of the beneficial use of his property, it becomes confiscatory and constitutes a taking of property with-

out due process of law. Pennsylvania Coal Company v. Mahon, 260 U.S. 393, 415 [43 S.Ct. 158, 67 L.Ed. 322]; Arverne Bay Construction Co. v. Thatcher, 278 N.Y. 222, 15 N.E.2d 587.

"The Court is, therefore, of the opinion, and so finds, that the action of the City Council in the rezoning of the property of petitioner, Bayside Warehouse Company from M-2-Industrial to C-3-Commercial is without proper consideration of the present uses of the property; is arbitrary in nature, and unlawful."

The record certified from the City Council clearly reflects facts upon which the foregoing findings could be based. The Planning Commission representative stated before the City Council the purpose of the proposed zoning was to "present a beautiful front door to the City of Memphis." The plans and studies heretofore mentioned were before the City Council.

The fact the Council studied, considered and basically adopted Study 35 "so as to present an attractive approach to the downtown area" was most pointedly shown by the remarks made by Councilman Weyth Chandler, wherein that official in expressing his views on Ordinance 181 stated to the City Council:

"Now why not have this beautiful drive down here. I say to you that if the City of Memphis, or the Shelby County Conservation Board wants to buy that, I certainly will look on it with favor. If they want to come in and take these peoples' property by either eminent domain or buying it from them on adjusted values, that's fine with me and we will have a nice place for

people to drive, but the question here is not just merely taking peoples' property under those legal processes, but it is just zoning it out of any real use and, as they will readily admit, deep freezing it for future use. It kinda reminds you of going out here and looking at some property out here in East Memphis, saying that would make a beautiful park, let's zone it R-1, or some other thing that we know will not be utilized, pulling it down in value and then later coming in and purchasing it for a lower price. I just don't think it is right, I don't think it is really lawful and I don't think it will serve us to do things like that. I think we either ought to buy it or leave it alone. It will still be green, it will still be pretty for at least a mile above and, of course, down at the tip below.''

██ ██ Admittedly the establishment of zoning plans and practices is a legislative exercise of the police power, and the judiciary will not undertake to substitute its judgment for that of the legislative branch of government. But, where the regulation goes so far as to deprive an owner of *the beneficial use* of his property, then the regulation becomes confiscatory and gives rise to judicial review.

██ As warned by Councilman Chandler and as found by the Trial Judge, the zoning of the property of Bayside Warehouse Company to commercial use only, denied the owner of any beneficial use under the existing facts. The City cannot by zoning ''freeze'' land for future use in such manner as to deny the owner the beneficial use.

██ Property may be regulated to a certain extent. If, as here, the regulation goes too far it will be recognized

as a taking. A strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change. Pennsylvania Coal Co. v. Mahon, supra. Assignment of Error II is overruled.

■ The City's complaint concerning the introduction of evidence at the hearing on petition for common law writ of certiorari is without merit. Additional evidence may be admitted before the trial court under T.C.A. sec. 27-901 et seq. on the question of whether the Board or Commission whose action is being reviewed exceeded its jurisdiction or acted fraudulently, illegally or arbitrarily. T.C.A. sec. 27-911; Hoover Motor Express Co. v. Railroad and Public Utilities Commission (1953) 195 Tenn. 593, 261 S.W.2d 233; Peoples Bank of Van Leer, Tennessee v. Bryan (1965) 55 Tenn. App. 166, 397 S.W.2d 401.

The City insists the admission of additional evidence was error because the evidence went to the reasons for the exercise of the Council's legislative discretion in re-zoning the property, whereas, the Court was limited to supervisory judicial review and could not substitute its judgment for that of the Council. The Trial Court specifically stated he was admitting evidence solely on the issue of whether the City Council acted capriciously and arbitrarily and not upon any question of the judgment of its members in what they did. The finding of the Trial Court clearly reflects this was his approach to the question.

■ If the evidence complained of was improperly admitted it was harmless error for two reasons: (1) The

finding of the Trial Court does not reflect reliance on the evidence; and (2) The record certified from the City Council clearly supports the finding by the Trial Court. We will not reverse for error unless it affirmatively appears the error went to the merits and affected the outcome of the trial. T.C.A. secs. 27-116, 27-117. Assignment of Error I is overruled.

The judgment of the Trial Court is affirmed. All cost is adjudged against the City of Memphis.

Carney, P. J., and Nearn, J., concur.