IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 2, 2012 Session

## CITY OF KNOXVILLE v. THE CITY OF KNOXVILLE PENSION BOARD, ET AL.

Appeal from the Chancery Court for Knox County
No. 178203-2     Daryl R. Fansler, Chancellor

No. E2012-00703-COA-R3-CV-FILED-DECEMBER 14, 2012

This appeal in a writ of certiorari action arises from a dispute over the authority of a pension board. The City of Knoxville ("the City") filed a petition for writ of certiorari in the Chancery Court for Knox County ("the Trial Court") challenging an action by the City of Knoxville Pension Board ("the Pension Board"). The City alleged that the Pension Board exceeded its authority in allowing a number of employees ("the Respondents") to select a new retirement plan option despite the fact that the Respondents already had made their one-time selection for a different and now less attractive retirement plan option. Knoxville voters previously had rejected by referendum an ordinance that would have given the Respondents this opportunity for a new selection. The Pension Board argued that it merely was correcting an inadvertent error that had disadvantaged the Respondents. The Trial Court held that the Pension Board exceeded its authority and reversed the actions of the Pension Board. The Respondents[1] appeal to this Court. We affirm the judgment of the Trial Court in its entirety.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;
Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and JOHN W. MCCLARTY, J., joined.

Al Holifield; Tina Haley; and, Sarah R. Johnson, Knoxville, Tennessee, for the appellants, Clarence Norman Bragg; James C. Brock, Jr.; Roy Brooks; Jeffery D. Caldwell; Lisa Denise Chambers; Valerie Denise Coleman; Donald E. Dailey; Terry Lamar Griffitt; Kenneth Ray Jackson; Brently Joel Johnson; Susan Kay; Stephen J. King; Todd Lay; Joseph Graham MacDonald; Carol C. Mahler; Fannie Paullette Maples; Randell Charles Maynard; Jeffery J. McCarter; Deborah C. Moore; Ernie L. Pierce, III; Michelle L. Pons; Zephyree D. Porter;

---

[1]The Pension Board elected not to appeal the Trial Court's judgment.

Greg Roberts; Richard Roller; Sandra Kelley Schade; Timothy Scott Schade; Robin D. Shelton; Paula S. Troutt; Joe Walsh; Gregory Scott Williams; and, James E. York.

Robert H. Watson, Jr.; John T. Batson, Jr.; and, E. Courtney Epps, Knoxville, Tennessee, for the appellee, the City of Knoxville.

**OPINION**

**Background**

The key events of this case took place over the course of more than a decade as a series of changes unfolded involving Knoxville's city employee pension plan. In November 1996, Knoxville voters approved Plan G, with Options 1 and 2, as part of the city's retirement system. Under Plan G, employees had to decide after 10 years of service whether to participate in option G1 or option G2, the two choices available. This was to be a one-time selection by the employee.

Some years later, Knoxville City Council ("the City Council") approved Ordinance O-413-00, which made enhancements to Plan G. The voters subsequently approved this ordinance, and it became effective in January 2001. Specifically, this change made G2 a more attractive retirement option by introducing the so-called Rule of 80 and increasing the multiplier. The Respondents had selected G1 prior to the changes that rendered G2 a now more attractive retirement option.

In March 2006, the Pension Board recommended to the City Council a charter amendment that would allow employees who had selected G1 prior to the G2 enhancements to make a one-time switch to G2. The City Council passed this ordinance and the proposal went to the electorate. The ballot item in question, City Charter Amendment O-126-06, noted: "The Chief Financial Officer's cost estimate of the proposed charter amendment is $1,100,000. If this provision is passed, the City of Knoxville will fund the pension plan in the amount of approximately $135,000 per year for the next 13 years." In a November 2006 referendum, Knoxville voters defeated the proposed charter amendment.

The matter did not end there, however, as the Respondents continued to advocate for a chance to make a new selection for their retirement plan. In 2008, the Pension Board considered recommending a charter amendment to address the Respondents' objectives, but nothing came of this effort. In April 2009, attorney Al Holifield, counsel for the Respondents, asked the Pension Board to reopen the Plan G election. Numerous discussions and exchanges between these parties occurred in the period thereafter.

Finally, on May 13, 2010, the Pension Board voted to allow the Respondents to make a one-time selection for a new retirement option. In so doing, the Pension Board relied on a provision of the Knoxville City Charter, provision 1352.2, which enables that body to correct certain errors:

If any incorrection or error in records or other error results in any member, survivor, contingent annuitant, or beneficiary receiving from the system more or less than he or she would have been entitled to receive had the records been correct or had the error not been made, the board, upon discovery of such error, shall correct the error by adjusting, as far as practicable, the payments in such a manner that the benefits to which the member, survivor, contingent annuitant, or beneficiary was correctly entitled shall be paid. If any incorrection or error in records or other error results in any member or the employer contributing to the fund more or less than should have been contributed had the records been correct or had the error not been made, the board, upon discovery of such error, shall correct the error by adjusting, as far as practicable, the contribution payable by the member or the employer so that the total contributions paid will equal the amount payable had the records been correct or had the error not been made.

In July 2010, the City filed a petition for writ of certiorari challenging the action of the Pension Board in the Trial Court, naming the Pension Board and the Respondents in the action. In April 2011, the Pension Board filed a motion to dismiss based upon the City's alleged lack of standing and the Trial Court's lack of subject matter jurisdiction. The Respondents adopted this motion. In June 2011, the Trial Court denied the Pension Board's motion to dismiss.

In November 2011, the Trial Court entered its Final Judgment holding that the Pension Board had exceeded its authority in allowing the Respondents to make a new selection for their retirement plan. In its Memorandum Opinion adopted in its Final Judgment, the Trial Court found and held, *inter alia*:

In defense of its position, the Board and the individual Respondents allege that the Board's actions were taken to correct an error made by the City Council. However, they fail to identify the error. Apparently, the Council passed an ordinance recommended by the Pension Board. These ordinances were placed on the ballot for ratification or rejection by the City voters by referendum in 1996, 2000, and 2006. The first two were approved, the latter rejected.

The motion before the Pension Board was to "find that an error was made by the Knoxville City Council in its passage of Ordinance O-413-000." Nothing is identified as an error in the language of the ordinance, the vote of City Council, the ballot submitted to referendum, or the vote by the public. Simply put, it appears the Board decided that the ordinance was bad law and set out to "correct" it to accomplish the Board's goals.

It is inconceivable that in enacting Section 1352.2, it was envisioned that an "independent board" of the Executive Branch of government could in effect repeal a duly enacted charter amendment lawful [sic] approved by both the legislative body and referendum of City voters.

In City of Memphis v. Shelby County Election Commission, 146 S.W.3d 531 (Tenn. 2004), at 537, our Supreme Court said as follows:

> The powers of government, divided into the legislative, executive, and judicial branches are separate and divisible. The legislative branch has the authority to make, alter, and repeal the law; the executive branch administers and enforces the law; and the judicial branch has the authority to interpret and apply the law.

The provisions of the Charter are mandatory and must be obeyed by the City and its agents. Barnes v. Ingram, 217 Tenn. 363, S.W.2d 821, 825 (Tenn. 1965). In Allman v. Pabletic, 292 S.W.3d 618, 626 (Tenn. 2009), our Supreme Court, quoting from City of Nashville v. Sutherland, 92 Tenn. 335, 21 S.W.674, 676-77 (Tenn. 1893), noted that:

> Municipal corporations represent the public, and are themselves to be protected against the unauthorized acts of their officers, when it can be done without injury to third parties . . . the protection of public corporations from such unauthorized acts from their officers is a matter of public policy in which the whole community is concerned. " . . . that a municipal corporation cannot and should not be bound by an *ultra vires* contract is a proposition that is well settled by authority and sustained by reason and justice. To hold otherwise would be to vastly enlarge the authority of public agents, and permit them to bind a municipal corporation by contracts absolutely prohibited by law, and thus, would expose the public to evils and abuses

that the limitations and restrictions shown around corporate offices are intended to prevent.

The pension is a benefit conferred upon employees of the City of Knoxville by virtue of the employment contract with the City. The Pension Board's actions on May 13, 2010, in respect to the thirty-one (31) individual Respondents exceeded the authority granted to the Board by existing Charter provisions.

The Pension Board and the Respondents filed a motion to alter and amend. The Trial Court amended its findings of fact by clarifying that the Knoxville City Charter, Article XIII, Section 1338, does not in fact have a provision stating that Knoxville is contractually or statutorily required to fund Plan G. The Trial Court, however, did not otherwise change its earlier decision, including the Trial Court's central holding that the Pension Board exceeded its authority in allowing the Respondents to make another selection for their retirement plan. The Respondents appeal to this Court.

## Discussion

We restate and consolidate the Respondents' issues on appeal as follows: 1) whether the Trial Court erred in declining to hold that the City lacked standing to bring this writ of certiorari action; and, 2) whether the Trial Court erred in holding that the Pension Board's actions exceeded its authority. In a motion to dismiss filed by the City in this Court, resolution of which we deferred to the panel, the City argues that the Respondents lack standing to pursue this appeal as the Pension Board elected not to appeal the Trial Court's judgment.

This is a common law writ of certiorari action. The common law writ of certiorari, an extraordinary remedy, is established in statute at Tenn. Code Ann. § 27-8-101, *et seq.*, and, its procedures are governed by Tenn. Code Ann. § 27-9-101, *et seq.* Our Supreme Court has articulated the standard of review in common law writ of certiorari cases:

> "In such actions the reviewing court is limited to inquiry as to whether the administrative agency acted fraudulently, illegally or arbitrarily. *Hoover Motor Express Company v. Railroad and Public Utilities Commission*, 195 Tenn. 593, 261 S.W.2d 233 (1953).

***

-5-

Under the common law writ of certiorari, questions of law only will be reviewed by the courts. An action of an administrative agency which is not supported by any evidence is arbitrary and void and may be quashed on common law writ of certiorari. Whether or not there is any material evidence to support the action of the agency is a question of law to be decided by the reviewing court upon an examination of the evidence introduced before the agency. Any additional evidence offered to the reviewing court is limited to the question of whether the agency exceeded its jurisdiction or acted fraudulently, illegally or arbitrarily. *Hoover Motor Express Co., Inc. v. Railroad & Public Utilities Commission*, 195 Tenn. 593, 261 S.W.2d 233 (1953). *People's Bank of Van Leer v. Bryan*, 55 Tenn.App. 166, 397 S.W.2d 400 [401]; *Bayside Warehouse Co. v. Memphis*, 63 Tenn.App. 268, 470 S.W.2d 375; *Brown v. Tenn. Real Estate Comm.*, Tenn.App. 1972, 494 S.W.2d 506, cert. den. 414 U.S. 877, 94 S.Ct. 54, 38 L.Ed.2d 122."

In the trial court, under the common law writ, reversal or modification of the action of the Civil Service Board may be had only when the trial court finds that the Board has acted in violation of constitutional or statutory provisions or in excess of its own statutory authority; has followed unlawful procedure or been guilty of arbitrary or capricious action; or has acted without material evidence to support its decision. The trial court does not weigh the evidence. The scope of review by the appellate courts is no broader or more comprehensive than that of the trial court with respect to evidence presented before the Board.

*Watts v. Civil Serv. Bd. for Columbia*, 606 S.W.2d 274, 276-77 (Tenn. 1980).

Review on a common law writ of certiorari is very narrow, and we do not inquire into the intrinsic correctness of the Pension Board's decision. As we have stated:

Tennessee Code Annotated § 27-9-101 provides for judicial review of a decision by any local board or commission by the filing of a petition for a common law writ of certiorari. *See Lafferty v. City of Winchester*, 46 S.W.3d 752, 758 (Tenn. Ct. App. 2000); *Wilson County Youth Emergency Shelter v. Wilson County*, 13 S.W.3d 338, 342 (Tenn. Ct. App. 1999); *Walker v. Metropolitan Bd. Of Parks And Recreation*, Nos. M2007-01701-COA-R3-CV, M2008-01226-COA-R3-CV, M2008-02218-COA-R3-CV,

M2008-01748-COA-R3-CV, 2009 WL 5178435 at *18 (Tenn. Ct. App. Dec. 30, 2009) (Petitions to Rehear Denied Jan. 11 and 26, 2010) (Rule 11 perm. app. denied June 30, 2010).

The scope of review under the common law writ of certiorari is very narrow. It does not involve an inquiry into the intrinsic correctness of the decision of the tribunal below, but only as to whether that tribunal has exceeded its jurisdiction, or acted illegally, fraudulently or arbitrarily. *McCallen v. City of Memphis*, 786 S.W.2d 633, 638 (Tenn. 1990); *Hutcherson v. Lauderdale County Bd. of Zoning Appeals*, 121 S.W.3d 372, 375 (Tenn. Ct. App. 2003); *Lafferty v. City of Winchester*, 46 S.W.3d at 759. A court does not have the authority to re-weigh the evidence or to substitute its own judgment for that of the Commission. *Hoover, Inc. v. Metro Bd. Of Zoning Appeals*, 924 S.W.2d 900, 904 (Tenn. Ct. App. 1996). If there is no material evidence to support a tribunal's action, it is arbitrary or illegal. *Harding Academy v. Metropolitan Government of Nashville*, 207 S.W.3d 279, 283 (Tenn. Ct. App. 2006); *Wilson County Youth Emergency Shelter v. Wilson County*, 13 S.W.3d at 342; *Sexton v. Anderson County*, 587 S.W.2d 663, 667 (Tenn. Ct. App. 1979).

The trial court's review of the evidence is confined to the administrative record, except that additional evidence may be introduced for the sole purpose of determining whether the tribunal below has exceeded its jurisdiction, or acted illegally, fraudulently or arbitrarily. Tenn. Code Ann. § 27-9-111(b); *Watts v. Civil Serv. Bd. for Columbia*, 606 S.W.2d 274, 277 (Tenn. 1980); *Hemontolor v. Wilson County Board of Zoning Appeals*, 883 S.W.2d 613, 618 (Tenn. Ct. App. 1994).

Our review of the evidence on appeal can be no broader or more comprehensive than the trial court's review. *Watts v. Civil Serv. Bd. for Columbia*, 606 S.W.2d at 277; *Jacks v. City of Millington Bd. of Zoning Appeals*, 298 S.W.3d 163, 167 (Tenn. Ct. App. 2009).

*Shute v. Metropolitan Government of Nashville, Davidson County*, No. M2009-01417-COA-R3-CV, 2010 WL 3064362, at **3-4 (Tenn. Ct. App. August 5, 2010), *Rule 11 appl. perm. appeal denied December 7, 2010.*

We first address the City's motion to dismiss filed in this Court. The City argues that the Respondents lack standing to pursue this appeal as the Pension Board has elected not to appeal the Trial Court's judgment.

Standing is a judge-made doctrine by which a court determines whether a party should be permitted to pursue a claim. *City of New Johnsonville v. Handley,* No. M2003–00549–COA–R3–CV, 2005 WL 1981810, at \*15 n. 23 (Tenn. Ct. App. Aug. 16, 2005), *Rule 11 appl. perm. appeal denied February 6, 2006.* We have stated that the basis for this decision is "whether the plaintiff has alleged a sufficiently personal stake in the outcome of the litigation to warrant a judicial intervention." *Wood v. Metro. Nashville & Davidson County Gov't*, 196 S.W.3d 152, 157 (Tenn. Ct. App. 2005) In *Petty v. Daimler/Chrysler Corp.*, 91 S.W.3d 765, 767 (Tenn. Ct. App. 2002), we set forth three indispensable elements which a party must demonstrate in order to establish standing to prosecute a cause of action:

> First, the party must demonstrate that it has suffered an injury which is "distinct and palpable," ... and not conjectural or hypothetical.... Second, the party must establish a causal connection between that injury and the conduct of which he complains.... Third, it must be likely that a favorable decision will redress that injury. (citations omitted.)

We disagree with the City's contention that the Respondents lack standing. First, we observe that the City actually named the Respondents in the petition for writ of certiorari in the first place. It is peculiar for the City to argue that the Respondents, though named by the City in this action, have no recourse of appeal from the Trial Court's judgment. The Respondents were parties to the original action brought by the City. Tenn. R. App. P. 3 addresses the right of appeal of civil judgments. While the Pension Board has elected not to appeal the judgment of the Trial Court, the option to appeal remained open for the Respondents under the Tennessee Rules of Appellate Procedure.

The City also argues that the injury suffered by the Respondents is tenuous. However, the City, throughout its arguments on appeal, asserts that the Pension Board's actions will cost the City a large sum of money, perhaps over one million dollars. This cost would be in the form of additional retirement income for the Respondents. This appeal fundamentally is about whether the Trial Court erred in reversing a decision of the Pension Board that materially affected the Respondents as well as the City. Therefore, the Respondents clearly have an interest in, and, are directly impacted by, the judgment of the Trial Court.

The Respondents, named in this action by the City and directly impacted by the Trial Court's judgment, properly may appeal the judgment of the Trial Court under the applicable appellate rules. We hold that the Respondents have standing to appeal the Trial Court's judgment in this case. We deny the City's motion to dismiss.

We next address whether the Trial Court erred in declining to hold that the City lacked standing to bring this writ of certiorari action. The Respondents present several reasons why the City lacked standing, which we restate as follows: 1) the City was not "aggrieved" for writ of certiorari purposes; 2) the City was not a party to the proceeding sought to be reviewed; and, 3) the City did not exhaust all the administrative remedies available. We disagree with the Respondents' arguments as to this issue.

Just as the Respondents were, the City surely was impacted by the action of the Pension Board, and, we believe, "aggrieved" for the purposes of a writ of certiorari action. An estimate in the record indicates that the cost of shifting these 31 individuals to the more generous retirement option could cost $1,700,000. Even accounting for inherent difficulties in forecasting long-term pension costs, it seems clear to us that the City would be impacted were the Respondents allowed to switch to the G2 enhanced plan and that the City, therefore, was aggrieved.

We also hold that the City was not required to be a party in the proceeding below to have standing in this action. We have stated:

> *Wood* states that in addition to being "aggrieved," "[t]he party must also show that it was a party to the agency proceedings sought to be reviewed." *Wood*, 196 S.W.3d at 158 (citing *City of Brentwood*, 149 S.W.3d at 57; *Horton v. Tennessee Dep't of Corr.*, No. M1999-02798-COA-R3-CV, 2002 WL 31126656, at *4 (Tenn. Ct. App. Sept. 26, 2002)). *City of Brentwood* states that "[i]n addition to this statutory requirement [Tenn. Code Ann. § 27-9-101], persons seeking judicial review of a board of zoning appeals decision must have been parties to the proceeding before the board." *City of Brentwood*, 149 S.W.3d at 57 (citing *Levy v. Board of Zoning App.*, No. M1999-00126-COA-R3-CV, 2001 WL 1141351, at *5 (Tenn. Ct. App. Sept. 27, 2001). While *Levy*, citing Tenn. Code Ann. § 27-9-104, states that parties to an administrative proceeding continue to be parties to a review under a writ of certiorari, it does not stand for the proposition that to have standing to file a petition for review of a final decision of any board or commission a petitioner must have been a "party" to the hearing, meeting, or other proceeding during which the final decision was made. *See Levy*, 2001 WL 1141351, at *5.

*Trosper v. Cheatam County Planning Com'n*, No. M2009-01262-COA-R3-CV, 2010 WL 175094, at *5 n. 2 (Tenn. Ct. App. Jan. 19, 2010), *no appl. perm. appeal filed*.

*Trosper*, which the Trial Court relied on in holding that the City indeed had standing in this case, supports the position of the City that it need not have been a party to the proceeding below to have standing to bring a writ of certiorari action. The Respondents take issue with the fact that the Trial Court relied on unpublished cases such as *Trosper* in denying the Respondents' motion to dismiss below. That argument is without merit as unpublished opinions of this Court may constitute persuasive authority. We agree with the analysis and reasoning in *Trosper*.

Lastly on the issue of standing, with respect to whether the City failed to properly exhaust other remedies before filing its petition for writ of certiorari, we believe that the City had no other means of appeal of the action taken by the Pension Board. The Respondents suggest that the City might have objected or made a motion to reconsider.[2] Such possible courses of action, however, would not have constituted actual appeals. The City's next available and logical step upon being aggrieved by the decision of the Pension Board was the step it actually took: filing a petition for writ of certiorari in the Trial Court.

Having concluded that all parties have standing and this appeal is properly before this Court, we address whether the Trial Court erred in holding that the Pension Board's actions exceeded its authority. The City argues that "amending a city charter is a legislative act and not an administrative task that can be accomplished through a municipal board." We agree with the City.

We believe that charter provision 1352.2 relied on by the Pension Board to do what it did is applicable to mistakes such as technical errors, oversights, or flawed calculations. Provision 1352.2 is not meant either to allow or to give authority to the Pension Board to legislate. If we were to adopt the Respondents' position, the Pension Board could, in effect, amend the city charter and bypass the voting public altogether in the name of correcting errors.

We disagree with the characterization of the May 13, 2010 decision by the Pension Board as the mere correction of an error pursuant to charter provision 1352.2. The type of error that the Pension Board may correct pursuant to charter provision 1352.2 simply is not the type of "error" at issue in this case. Rather, this case is about a policy choice already rejected by Knoxville voters in a referendum. The Pension Board, despite whatever good intentions it had in allowing certain employees to make another selection for their retirement program in light of changes to that program, does not have the authority to unilaterally amend the city charter. A democratic decision of the voters that the Pension

---

[2]Curiously, the Respondents also have argued that the City was not a party to the Pension Board's proceedings.

Board disagrees with is not rendered a "mistake" because the Pension Board and others disagree with the voters. In 2006, Knoxville voters rejected an amendment that would have permitted the Respondents to make another retirement selection as they now seek to do. The Pension Board does not have the authority to circumvent the popular will of the City's voters and salvage the defeated amendment by calling its action a correction of a "mistake."

We hold that the Trial Court did not err in holding that the Pension Board exceeded its authority.[3] We affirm the judgment of the Trial Court.

## **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellants, Clarence Norman Bragg; James C. Brock, Jr.; Roy Brooks; Jeffery D. Caldwell; Lisa Denise Chambers; Valerie Denise Coleman; Donald E. Dailey; Terry Lamar Griffitt; Kenneth Ray Jackson; Brently Joel Johnson; Susan Kay; Stephen J. King; Todd Lay; Joseph Graham MacDonald; Carol C. Mahler; Fannie Paullette Maples; Randell Charles Maynard; Jeffery J. McCarter; Deborah C. Moore; Ernie L. Pierce, III; Michelle L. Pons; Zephyree D. Porter; Greg Roberts; Richard Roller; Sandra Kelley Schade; Timothy Scott Schade; Robin D. Shelton; Paula S. Troutt; Joe Walsh; Gregory Scott Williams; and, James E. York, and their surety, if any.

_____
D. MICHAEL SWINEY, JUDGE

---

[3]The City also argues that the Pension Board acted illegally in that its vote to "correct" was not carried by a proper majority vote. The Trial Court, however, did not rule on this issue. We need not address this issue for resolution of this appeal, and we do not.